[No. 12640.  Department One.  July 20, 1915.]

## SKAGIT STATE BANK, *Appellant*, v. S. L. MOODY, *Respondent*.[1]

BILLS AND NOTES—ACCOMMODATION NOTES—CONSIDERATION. Where the state bank examiner had required a bank to collect overdue interest on a note or charge the note off, and officers of the bank gave notes to take up the interest in order to satisfy the examiner, their notes must, in law, be considered as an accommodation for the makers of the note, and not for the accommodation of the bank; hence there was a sufficient lawful consideration therefor.

SAME. The indorsement of the interest on the note by the bank was a waiver of a present right of action against the maker and a sufficient consideration for the officer's notes for the overdue interest.

BILLS AND NOTES—VALIDITY—ILLEGAL PURPOSE—OTHER CONSIDERATION. An unlawful agreement that officers of a bank should give notes for the amount of overdue interest on a note held by the bank, in order to deceive the state bank examiner, without being liable to the bank, does not invalidate their notes, as between the parties, where there was a lawful consideration therefor, the sum being intended as payment of the overdue interest and indorsed on the note as such.

Appeal from a judgment of the superior court for Skagit county, Pemberton, J., entered October 31, 1913, upon the

[1]Reported in 150 Pac. 425.

verdict of a jury rendered in favor of the defendant, in an action upon a promissory note.   Reversed.

*Shrauger & Henderson,* for appellant.
*Thomas Smith,* for respondent.

CHADWICK, J.—On the 11th day of April, 1910, respondent was a director of the appellant bank.   Appellant held a note known as the Cain Brothers' note, or the Darrington Mill note, in the principal sum of $8,000, upon which the interest had so long defaulted that the state bank examiner had directed that the interest be collected or the note charged off.   The note had been originally taken by R. M. Moody and L. L. Moody, brother and nephew of respondent, and had been by them indorsed over to the bank without recourse. L. L. Moody was the president of appellant bank.

Seemingly in anticipation of a call from the state bank examiner, L. L. Moody, P. M. Moody, R. M. Moody, Ollie Moody, and one Fellows, a then stockholder and later cashier of the appellant, met at the home of respondent and it was decided that respondent and his brother R. M. Moody should each give a note for the sum of $500, payable to the bank, to take up the overdue interest on the Cain Brothers' note.   These notes were given, carried into the bank's bills receivable, and the amount thereof placed to the credit of the overdue interest account as a payment on the Cain Brothers' note.   The payment was also indorsed thereon.   The control of the bank thereafter passed out of the hands of the Moody family.   The note of respondent was not paid when due.

To an ordinary complaint, respondent answered, admitting the execution of the note; and plead affirmatively, (a) that there was no consideration for the note; (b) that it was given for the accommodation of the bank and for the purpose of deceiving the bank examiner, and was therefore void; (c) that there was an express understanding that the note should

be thereafter returned to respondent; and (d) that, after the execution of the note, Fellows and one Davis bought the control of the bank and agreed and promised to return respondent's note to him. A demurrer to these affirmative defenses was overruled and the case went to trial. From a judgment entered upon a verdict in favor of respondent, this appeal is taken.

Respondent contends that, inasmuch as the Cain Brothers' note was known to be worthless at the time the note sued on was given, there was no consideration in law to sustain his promise. The question of consideration was the only question submitted to the jury by the trial court. Granting, but without holding, that respondent could set up a collateral oral agreement that he was not to be bound by his promise, it seems to us that there was a sufficient lawful consideration for the note. The position of respondent is that the note was given for the accommodation of the bank, and that one for whom an accommodation is made cannot sue directly upon the promise; that, as between the bank and respondent, the note being given to accomplish an illegal purpose, the law will leave the parties where they have placed themselves—that is, without remedy, one against the other.

While the note was given for the accommodation of the bank in a certain sense, that is to say, its consequence was to save the bank from the aspersions of the agent of the state and a possible finding of insolvency, it was, nevertheless, and in law entirely so, given for the accommodation of the Cain Brothers.

An accommodation note is one given as collateral to the promise or obligation of another. It neither asserts nor implies a consideration flowing direct from the payee to the maker. The note is supported by the obligation of the principal debtor. It is the fact that the maker receives no value therefor that gives the paper its character as accommodation paper. Rem. & Bal. Code, § 3420 (P. C. 357 § 57).

Respondent relies upon the case of *First Nat. Bank of Storm Lake v. Felt*, 100 Iowa 680, 69 N. W. 1057, and *Woodbury v. Glick*, 151 Iowa 648, 132 N. W. 67. These cases may be distinguished from the case at bar. While it was held that no recovery could be had upon notes given to cover loans to third persons made in excess of the legal limit and to thus satisfy the law and the demands of bank examiners, the bank being solvent and no rights of creditors being involved, it was nevertheless made to appear that the taking of the notes sued on was a banking transaction made by a bank otherwise solvent, with full knowledge and at the instance of the officers and directors of the bank. The transaction was in the one case expressly ratified at a directors' meeting, and in the other there was not only actual notice, but by a long continued practice which would impute notice to all concerned, whether there was actual notice or no. In the case at bar, the note was taken after a conference of what one of the witnesses admits was the "Moody family." The remaining directors testified that they had no knowledge of the transaction. One of them testifies to a seeming purpose on the part of those most heavily interested in the bank to keep the outsiders, the other directors, in ignorance of its affairs. But aside from these considerations, we are of opinion that there was a consideration for the note.

It is not denied, but admitted in terms by respondent and by the others who had knowledge of the facts, that the note was given as a present payment of the overdue interest on the Cain Brothers' note. Payment of interest was actually indorsed on the Cain note. The substitution of the note for the overdue interest was, in legal effect, a parting with a con- · sideration by the bank. The indorsement of a payment was a waiver of a present right of action against Cain Brothers, and a sufficient consideration under all authority. The bank, or rather its officers and principal stockholders, had put themselves in "a worse position" as the books say, in so far as the

10—86 WASH.

Cain Brothers' note was concerned. To illustrate, had the bank examiner actually ordered the officers to make the Cain Brothers' note good, and they had gone out and obtained respondent's note and presented it to him as a payment of the interest, the bank could not at that time, even upon his order, have sued Cain Brothers. By its own act and accommodation of respondent, it had made the paper "prime." Or, again, if, on the next day, the bank had sued on its own account, it could not repudiate the payment of the interest as an illegal transaction, without pleading the fraud of its officers and some of its stockholders, the disclosure of which would certainly have made its complaint subject to a demurrer.

Respondent seems to understand that a showing of no consideration to him moving is sufficient to satisfy the law. On the contrary, it is only where there is an absence of or failure of consideration to sustain the obligation that the defense is available. If two or more sign a note, the defense of no consideration is not available to the one who signed but who received none of the proceeds. The accommodating party is bound by the consideration moving to the other party and will not be heard to plead, as against the holder of the note, whether in the first hand or in that of an indorsee, no consideration, or even the defense of suretyship. See *Anderson v. Mitchell*, 51 Wash. 265, 98 Pac. 751; *Pitt v. Little*, 58 Wash. 355, 108 Pac. 941; *Aurora Land Co. v. Keevan*, 67 Wash. 305, 121 Pac. 469.

Finding that the payment of the interest on the Cain Brothers' note is a sufficient consideration, we have passed without opinion the question of public policy. That is, the right of the respondent to plead a fraud upon the law to defeat the terms and tenor of his obligation. *State Bank of Moore v. Forsyth*, 41 Mont. 249, 108 Pac. 914, 28 L. R. A. (N. S.) 501; *Pauly v. O'Brien*, 69 Fed. 460. In the *Forsyth* case, the court found a consideration, after a discussion of the law with several strictures upon a transaction similar to

the one now under inquiry. In the *Pauly* case, the bank was insolvent.

However, it will not be out of place to say that the insistence of counsel for respondent at the trial that the transaction, being conceived and carried out by the parties in fraud of the law, makes the note void as between the parties, is without merit. It is only where a note is given in consideration of an illegal transaction that it is void. The transaction between respondent and the bank was a lawful thing. Respondent willingly loaned his credit to the Cain Brothers' note. He intended it as a payment of their overdue interest. There is no suggestion of fraud or deception or that he misunderstood the purpose of it. It is the relation of debtor and creditor existing between the bank and Cain Brothers, and not the illegal purpose mentally reserved by the parties, that sustains the transaction.

Courts will not lightly overturn the ordinary transactions of men, legal and binding on their face, to work out an ulterior purpose resting in parol and in fraud. Where an obligation otherwise lawful is challenged as working a collateral fraud, a court will look first for a lawful ground upon which to rest its judgment, rather than look for an excuse to overturn it. Respondent's obligation is *prima facie* binding. His act was voluntary. He knew its purpose and that it was accomplished. He will be held to his promise.

Reversed and remanded with directions to enter judgment in accordance with this opinion.

MORRIS, C. J., PARKER, MOUNT, and MAIN, JJ., concur.