FIRST NATIONAL BANK OF NEW ROCKFORD, Appellant, v. E. R. DAVIDSON, C. McLACHLAN, W. H. CARSON, C. J. STICKNEY, and W. M. ROBERTS, Respondents.

(188 N. W. 194.)

**Bills and notes — note given to bank to cover up overdrafts and to withstand examination of bank examiner held asset of bank.**

1. In an action upon a promissory note, where the defense asserted was that the note was given to a bank purely for its accommodation to cover up temporarily overdrafts of a publishing company, of which the defendants were directors, to pass an examination by the federal examiner, without any consideration, and upon the understanding that the note become a part of the bank's assets and should not be a legal binding obligation upon the defendants, and, where, further as to one of the defendants, the defense was asserted that the note was signed and handed by such defendant to the plaintiff upon the express agreement that it should not take effect until certain conditions were first performed, it is *held*:

That the evidence establishes, as a matter of law, that the note became a part of the assets of the bank.

**Bills and notes — whether there was any consideration for note held for jury.**

2. That the questions whether there existed a consideration for the note and whether the note was given as an accommodation to the publishing company, were for the jury.

**Bills and notes — directors, who gave bank note to cover overdrafts of corporation, held liable on note to holder for value.**

3. That directors, who with full understanding assume a duty and responsibility for their company to take up its overdraft, the payments of which is its legal duty, and, who sign a note, in response to this duty and responsibility which serves as an accommodation to their company and the fulfillment of its duty, are liable to a holder for value of such note.

**Appeal and error — admission of evidence concerning contract of indemnity for payment of note to bank by former parties interested therein, and of their wealth, held prejudicial error.**

4. That the admission of evidence concerning the existence of a guaranty contract of indemnity for the payment of the note to the bank by former parties interested therein and, concerning their wealth, is prejudicial error.

**Bills and notes — failure to perform conditions precedent to delivery of note a good defense.**

5. That the failure to perform the conditions precedent to the de-

livery of the note was properly a defense for the defendant who pleaded such failure.

**Appeal and erorr — erroneous admission of evidence on one defense ground 'for a new trial, where it is impossible to determine on which of two defenses jury based its verdict.**

   6.  That the plaintiff is entitled to a new trial as to all of the defendants by reason of prejudicial error in the record.

Opinion filed Jan. 22, 1922.   Rehearing denied April 27, 1922.

Action on promissory note in District court, Eddy county, *Coffey,* J. From an order denying judgment non obstante, or, in the alternative, for a new trial, the plaintiff has appealed.

 Reversed and new trial granted.

*Bangs, Hamilton & Bangs, N. J. Bothne,* and *A. L. Netcher,* for appellant.

It was not necessary that any consideration should pass directly to the makers of said note, or that the makers should receive any personal benefit by reason of the execution and delivery of said note.   Section 6914 C. L. 1913; First Nat'l Bank v. Meyer, 30 N. D. 388; Marling v. Jones et al., 119 N. W. 931 Wis.; 3 R. C. L. p. 827.

The defendants, Carson and Stickney, had no knowledge of the agreement or promise made by Roberts with the other defendants, and insofar as they were concerned, the note Exhibit 1, was discounted in the ordinary and usual course of business.

Under such circumstances the promise or agreement made by Roberts and the knowledge thereof by said Roberts and by the said defendants Carson and Stickney, did not, and does not constitute a defense to the liability of any of said defendants, so executing and delivering said note.   Vol. 3 Fletcher Cyc. Corp., pp. 3237 and 3325; Thompson v. McKee, 5 Dak. 172; State Bank v. Forsyth, 28 L. R. A. (N. S.) 501, Mont.; Mead v. Pettigrew, 78 N. W. 945; First Nat'l Bank v. Oil & Coal Co. 28 L. R. A. (N. S.) 511; Pauly v. O'Brien, 69 Fed. 460.

The defendant McLachlan, was president of the Farmers & Merchants Bank of New Rockford.   He and the defendants Carson and Stickney were jointly interested with the defendant Roberts in the New Rockford Publishing Company, and the defendants McLachlan, Carson and Stickney must have known that at the time of the execution of said

note aforesaid, the said Roberts and the said defendants Carson and Stickney were acting for themselves and for their own benefit, or for the New Rockford Publishing Company and must have known and ought to have known that neither said Roberts nor either of the directors of said plaintiff bank could act as agent for the plaintiff bank and at the same time adversely to it.   Bank of LeRoy v. Purdy, 91 N. Y. Supp. 310, (312) ; Woodworth & Co. v. Carroll, 112 N. W. 1054 Minn.; McCarty v. Kepreta, 24 N. D. 395—414 ; Packers Nat'l Bank v. Rushart, 152 N. W. 789 Neb.; Exchange Bank v. Ins. Co. 120 N. W. 1010, Neb.; Amer. Nat'l Bank v. Ritz, 40 L. R. A. (N. S.) 156 W. Va.; First Nat'l Bank v. Persall, 125 N. W. 506 Minn.; Lilly v. Hamilton Bank, 29 L. R. A. (N. S.) 501, Mont.; State Bank v. Forsyth, 28 L. R. A. (N. S.) 501, Mont.; Brookhouse v. Union Pub. Co. 2 L. R. A. (N. S.) 993, N. H.; First Nat'l Bank v. Burns, 39 L. R. A. (N. S.) 764 ; First Nat'l Bank v. Briggs Assignees, 41 Atl. 580, Vt.

"It is not the duty of the president to make such contract, nor has he the power to bind the bank, except in discharge of his ordinary duties."   State Bank v. Forsyth, 28 L. R. A. (N. S.) 501, (507) ; Citing Bank of U. S. v. Dunn, 6 Peters 51, 8 L. ed. 316, (also see cases cited under Point 8).

"Courts are not compelled to accept unreasonable and incredible evidence as a sufficient basis for a legal judgment, simply because it is not contradicted by direct and positive testimony."   Hughes v. Hughes, 84 Atl. 647, Me.

"No consideration moving to an accommodation maker of a note is necessary to uphold it; the consideration supporting the promise of the maker being that parted with by the person taking the accommodation note and received by the person accommodated."   Marling v. Jones, 119 N. W. 931 Wis.; 3 R. C. L. p. 927.

"Evidence of a parol agreement between the payee of a note and the indorser that the latter should not be held liable on such indorsement is inadmissible, as varying the terms of a written contract."   Thompson v. McKee, 5 Dak. 172; 37 N. W. 367.

*Kelly & Morris, R. E. Rinker, F. B. Lambert,* and *Knauf & Knauf,* for respondents.

"The party for whose accommodation a promissory note was executed is not entitled to recover from the accommodation party therein, but such

defense in order to avail must be especially pleaded." First State Bank of Eckman v. Kelly, 30 N. D. 84; 152 N. W. 125; Farmers Security Bank v. Nelson, N. D. 179 N. W. 917; First National Bank v. Miller, N. D. 179 N. W. 997; Scandinavian Am. Bank v. Westby, 41 N. D. 276; 172 N. W. 665; 8 Corp. Jur. p. 259; 8 Corp. Jur. p. 262; Pittsburgh St. Bank v. Kirk (Pa.) 65 At. 932; Arthur v. Brown (S. C.) 74 S. E. 652; Conrad v. Clark (Minn.) 119 N. W. 214.

"The party for whom accommodation negotiable paper is made cannot sue the accommodation party." Williams v. Hasshagen, 166 Cal. 386; 137 Pac. 9.

"A party to a note can defend on the ground that the note was signed as an accommodation to the payee." Corliss v. Howe, 11 Gray. 125.

## Statement.

BRONSON, J. This is an action upon a promissory note. The plaintiff has appealed from an order denying judgment non obstante, or, in the alternative, for a new trial. The material facts, necessary to be stated, are as follows:

In September, 1918, the defendant Davidson executed the note involved for $3,000, payable, on March 1, 1919, to the plaintiff. It was indorsed in blank by the remaining defendants. The defendant Davidson in his separate answer alleged, in addition to the defense of the other defendants, that he signed this note and delivered it to the plaintiff upon the express condition that the same should not be deemed delivered nor used until the plaintiff should first obtain a valid first chattel mortgage upon the property of the New Rockford Publishing Company; that the plaintiff did not so do, and the note never has been delivered. The remaining defendants, excepting Roberts, who was not served and did not appear, in their answer, alleged that the note was given without consideration and wholly for purposes of accommodation to the plaintiff for temporary use, and upon the definite understanding that the note should not be paid nor be a personal obligation. It appears that in 1916 the said publishing company was incorporated and established for the purpose of assisting in the movement for the removal of the State Capital to New Rockford. This company sold some $10,000 or $11,000 of its stock. It established a daily newspaper at New Rockford and a job-printing plant. It employed an editor and manager. The defendants were associated with this company. The defendant Roberts was the

president and a director. The remaining defendants were directors. The company did its banking business with the plaintiff and the Farmers & Merchants Bank of New Rockford. The defendant Roberts was then and until the time when the note involved was signed, the president of the plaintiff and actively in charge of its business. In January, 1917, the company had overdrawn its account with the plaintiff.

One Phillips, then the manager of the newspaper, gave a note to the plaintiff for $2,500. He testified that his employer, Roberts, wanted an accommodation note temporarily to put in the bank to take care of the overdraft as the bank was about to be examined. At the same time, the defendants Roberts, Stickney, McLachlan, and Carson gave their promissory note for a like amount payable to Phillips or bearer. This note was then delivered to the plaintiff as collateral to the Phillips' note. The defendant McLachlan, a physician and the president of the Farmers & Merchants Bank for many years, testified that, when Roberts requested the indorsement for the Phillips' note, he stated that no one upon the notes would be held. The defendant Stickney, a merchant and a director of the plaintiff bank from November 1917, to January, 1920, testified: That when the Phillips' note was made the company had an overdraft of some $6,000 or $7,000. That Phillips (a newcomer) had no local credit standing. Roberts wanted a note to Phillips as an accommodation to the bank to cover the overdraft. That it could not be carried and would not be passed by the examiner. The defendant Carson, a contractor and a director in the plaintiff bank when the note in suit was signed, testified: That Roberts wanted him to sign the note (to Phillips) so that he could take up the overdraft and make it appear upon the books that it was paid. That he assured him that it was for the accommodation of the bank, and that he would never be asked to pay it. That Roberts informed him that the note would appear upon the books of the bank in place of the evidence of indebtedness that the bank had against the publishing company. In April, 1917, Roberts had a conference with the defendants, directors of the publishing company, in the Farmers & Merchants State Bank. The conference was limited to directors of the publishing company, Roberts, Stickney, Carson, and McLachlan were present. Stickney testified that Roberts had under consideration the indebtedness of the publishing company. Roberts told them about the overdraft of the company, that there would be an examination of the bank, that the bank could not carry it and that it had to be fixed up in some way. He wanted accommodation notes to be used

temporarily for the bank. He explained that the assets of the publishing company would more than take care of this indebtedness, and that they would never be expected nor asked to pay the notes. McLachlan then made a note for $2,500 to the bank, and Roberts, Stickney, and Davidson gave a note for a like amount to McLachlan as collateral to such note. McLachlan testified that Davidson was there at this meeting, although, otherwise, he testified that he was not sure; further that the amount of the overdraft was divided; that assurance was given that they would never have to pay the notes; that it was distinctly understood that the signers of the note should not be held personally. Carson testified: That Roberts called him into the bank (plaintiff's bank). Roberts and Stickney had signed the note ($2,500 note). Roberts told him that there was an overdraft there, and he wanted to cover it with these notes. That he assured him that he would never be held liable, and it would only be carried temporarily. Roberts told him the first note (which Carson had signed) was still held in the bank, and was being carried in place of some money advanced for the publishing company.

In September, 1918, as McLachlan testified, Roberts called another meeting. It was held in the Farmers & Merchants Bank. Roberts, Stickney, Carson, and McLachlan were present. Roberts called the meeting to order. Roberts stated that he had paper in plaintiff bank that was overdue; that there were overdrafts not included in the notes given previously (the accommodation notes); that he wanted to have notes representing these original notes and overdrafts, since made, placed in accommodation notes covering the total amount; that the bank was being examined, and he must have these notes for use while the bank was being examined. He stated that they would not have to pay them; that they would not be held responsible in any way for them. He figured and showed Carson on a piece of paper that there was plenty of security in the plant; that nothing was being put over on the examination; that the security was all right, but that it could not be put in that way under the banking law. Otherwise he testified that at this time the plaintiff bank had an indebtedness of $2,750 running from the publishing company, secured by a chattel mortgage upon the plant. At that time Roberts had the Davidson note (the note in suit) there. He thinks they signed three notes there. They objected to signing further accommodation notes, but upon explanation of the purposes they signed the note (the Davidson note indorsed) for accommodation purposes only.

Stickney testified that this note (in suit) was signed on September 14, 1918 in the Farmers & Merchants Bank; that it was a part of a series of notes; that Roberts, Davidson, McLachlan, and he himself were there, and Carson, he believed; that the sum and substance of the conversation was that the bank had this overdraft, and that he desired it fixed in such a way that it could be temporarily carried; that he was expecting an examination of the bank, and he wanted these notes put in there so that the bank could pass without any difficulty; that he assured them that they would never be called upon to pay these notes; that they were simply accommodation notes. Later, he further testified that Roberts stated that they were checking up the bank; in fact they were working in the bank at that time, and that it was absolutely necessary for him to have this paper renewed immediately. Further, he testified that the plaintiff bank was transferred on the night this note was indorsed to the present owners from Roberts and Beiseker. Carson testified that Roberts came to his office. He had the note (in suit) already signed by Davidson and a note for $3,200, he believed, not signed by anybody. Roberts stated that it was a renewal of the other notes; that they were checking up the bank, and he had to have it right away; that they would use it only for a couple of days, and that they would never be held liable upon them; that later they all signed at the bank; that at that time he was a director in the plaintiff bank.

The defendant Davidson testified that, during the time Roberts was president, he was in the Farmers & Merchants Bank; that in June, 1917, Roberts called him in the back room of the Farmers & Merchants Bank, and stated that the publishing company had an overdraft with the plaintiff; that he wanted him to give an accommodation note for $2,500; that he would get McLachlan, Stickney, and Carson to indorse the note, and he (Davidson) would never have anything to pay on it; McLachlan and Stickney were present; that he signed that note there as an accommodation note; that he understood that his note would stand in lieu of the overdraft, and the purpose was to wipe it out, although the claim between the bank and the publishing company would still remain; that he was then a stockholder in the publishing company; that he indorsed the note to McLachlan in April, 1917, although he did not remember the circumstances or the occasion of it; that he did not attend any meeting with that bunch; that he was appointed by the board to fill a vacancy (directorship) in the latter part of 1917, was reelected a director at the stockholders meeting late in 1917 or in January, 1918, and

sold his stock and resigned as director in June, 1918. He further testified that on September 13, or 14, 1918, Roberts came into the country with an automobile and saw him. Roberts stated that he was renewing some paper, and desired a renewal note; that the examiner would be there in a few days, and he must have a new note; that the bank was still carrying the old note; that he refused to give a renewal, because he did not owe the bank anything; that Roberts then stated that he would get McLachlan, Stickney, Carson, and himself to indorse the note, and would get a mortgage upon the property of the publishing company and put behind the note so he would never have anything to pay on the note; that he signed the note upon the distinct understanding that he would secure the indorsements as stated and procure the mortgage; and that until that time he would not use the note.

It appears in the evidence that the plaintiff did not secure this mortgage, although prior to this action the Farmers & Merchants Bank took a mortgage from the publishing company covering all its property. It appears further in the evidence that about September 14, or 15, 1918, the bank changed management. Mortenson succeeded Roberts as president. One Aas became vice president. Roberts and Beiseker gave a written guaranty to the bank, thus under new management, covering the paper in the bank. It appears further that the defendant Stickney was a member of the discount and examining committees of the plaintiff bank. He testified that he may have checked over the bills and notes; that he took part in an examination once while Roberts was there and since the new administration; that he and Carson checked over the notes and bills of the plaintiff bank in January, 1919; that he presumed that he checked over this note and other notes in the series; that he knew, in January, 1919, when the examination was made, that he was checking these notes in the assets and making an official report as officer of the bank, and that Carson was there and joined with him; that at that time he said nothing to the bank officers about any defects in these notes. He otherwise testified, however, that after the change of administration at a meeting, he thinks, of the board of directors, he told the vice president that this paper was accommodation paper; that Mortenson was there; that they said they were not concerned; that it was immaterial, as they had a guaranty contract; that the guaranty was there and he read it himself. Carson corroborated this testimony. The officers of the bank, Mortenson, Aas, and the cashier, denied any notification or knowledge that this note was accommodation paper. The cashier testified

that this note (in suit) and the series were in the bills receivable of the bank.

The trial court submitted the case to the jury upon extensive instructions. The question as to whether the note ever became a part of the assets of the bank was submitted as an issue of fact. It submitted the issue of consideration and the giving of the note, as a pure accommodation for the bank and not as a legal obligation. Further, as to the defendant Davidson, it submitted the issue of a delivery conditional upon express conditions, and the failure of the plaintiff to perform such conditions. A general verdict was returned in favor of the defendants.

## Contentions.

The plaintiff has assigned numerous specifications of error. These cover the admission or rejection of evidence, the instructions of the trial court, and the sufficiency of the evidence to justify the verdict. In general, the plaintiff contends that the defendants executed the note with full understanding and without duress, fraud, or undue influence; that the evidence discloses a good and valuable consideration for the note; that the note was not given as an accommodation for the plaintiff bank, but for the accommodation of the publishing company; that the evidence permitted to be introduced, concerning the arrangement of treating the note in respect to the overdraft, the examination by the federal bank examiner, and the nonliability of the defendants thereon, was incompetent and inadmissible; that such testimony varied and altered a written instrument; that it established an agreement beyond the powers of the bank president, and operated as a fraud upon the plaintiff bank; that the defendants cannot plead their own fraud as a defense.

The respondents contend, with respect to the defendant Davidson, an issue of fact was presented upon an express condition precedent, the issue of conditional delivery; that the finding of the jury is determinative of this issue. With respect to the other defendants, it is maintained that, since there is no liability on the part of the defendant Davidson, the principal, no liability can attach to the other defendants, for the reason that they are in the position of sureties only, and as such exonerated by statute (§ 6680, C. L. 1913); that otherwise the evidence, properly admissible concerning the transactions between the parties and the nature and character to be given to the note involved, was all properly for determination by the jury. The record is voluminous. Able and exten-

sive briefs have been presented by both parties. Necessarily, only a concise generalization of the various contentions has been stated.

## Decision.

1. *Does the record disclose that the note became a part of the assets of the bank?*

We are of the opinion that it appears without controversy that this note, as well as the note or notes for which it was given, were carried in the bills receivable of the plaintiff bank. But it may be urged that the agreement was that such note or notes should not be considered a part of the assets of the bank, and not, in fact, to be any legal obligation at all. The testimony concerning this phase all proceeds from the defendants themselves, and can be answered by their own testimony. The various overdrafts of the publishing company were assets of the plaintiff. Its money or the money of its depositors had been used to create them. These notes were given, as they testified, to "cover up" these overdrafts and as a means to withstand the examination of the federal bank examiner. This very understanding and purpose, as stated, involved the necessity of such notes becoming a part of the assets of the bank. Some of the defendants admit that they understood, and knew that through these notes the overdrafts would be taken up. It does not lie well in the mouths of the defendants to say that these notes were not to become a part of the assets, when the very purpose and understanding for which they made them was in order that they might become a part of the assets. Such notes did in fact become a part of plaintiff's assets. It is immaterial that the understanding was that they should so be, temporarily. The defendants could not escape a knowledge and understanding that these notes would be placed in the assets of the bank. They were all business men, familiar and connected with the banking business. Two of them directors of the plaintiff bank and two of them connected with the Farmers & Merchants Bank.

2. *Does the record disclose a consideration for the note?*

The writer is of the opinion, as a matter of law, that out of the mouths of the defendants a consideration is established which the defendants may not deny by mere assertion. The defendants, all of them, were directors of the Publishing Company; Davidson for part of the time. Although, as they testified, there was a president, Roberts, and

a manager, who conducted the business of the publishing company, they were nevertheless concerned, and legally concerned in the company's business. The overdrafts of the company were matters of their concern. They recognized it by attending the meetings of directors called for the very purpose of considering such overdrafts. It is true that no formal meetings were had and no formal action was taken, but in many things apparently the publishing company functioned without formality. May these directors say that there was no obligation, no responsibility, no duty, when they assumed and pretended to take an obligation, responsibility, and duty? It was the duty of the publishing company to pay these overdrafts. It is not asserted nor contended that they were not legal obligations. It was its duty to promptly pay them, since the company, through its officers, had issued drafts or checks upon the banks, representing that it had money to meet the same, when in fact it had no such money. The directors cannot deny any responsibility or duty simply because the stockholders had authorized the directors to make a contract with a manager and editor to have full power to conduct the business affairs of the company. It is not otherwise shown that the duties of these directors were different than those usual for directors of a corporation. In fact, the stockholders required the manager to submit, every 90 days, a comprehensive statement concerning its business, the amount of cash on hand, and its indebtedness. Assuredly, in the contract with the manager, the directors were representing the company. These directors, when the matter of taking up the overdrafts was presented, knew or were bound to know that the bank's money or the money of its depositors had been used to pay such overdrafts. When these directors indorsed the note of its own manager to take care of an overdraft, when they, likewise, later so made or indorsed a note, after the meeting in April, 1917, did they assume no responsibility nor duty? If so, and such note or notes were to be temporarily used, only for a few days, what was their duty concerning the overdrafts that would have to be reinstated if the showing of the notes should be withdrawn? Could they and their manager assume that either the notes or the overdrafts needed no further attention. Either the notes operated to take up, in fact, the overdrafts, as some of the defendants' testimony admits, or the duty remained to pay such overdrafts. No showing is made that the manager or the directors attempted in any way to otherwise pay these overdrafts, by notes, money, or security of the company. It is to be presumed that they desired the company to live. The action of the directors give sup-

port to this presumption. It is ordinarily the duty and function of directors to see that a corporation does live, and live a legal business life. If these defendants had likewise given a note for their personal overdraft, would they contend that there was no consideration therefor? It is plainly evident that the overdrafts were due, when made. The giving of the notes operated to extend the payment thereof. The failure to otherwise pay or secure such overdrafts again operated to extend the payment of the indebtedness as to the plaintiff bank. Certain facts sometimes establish their own incontestability. It is obvious that there was a consideration for these notes. 3 R. C. L. 927; 8 C. J. 220, 238; Fulton v. Loughlin, 118 Ind. 286, 20 N. E. 796; Bank v. Wixon, 46 Barb. (N. Y.)218; Skagit State Bank v. Moody, 86 Wash. 286, 150 Pac. 425, L. R. A. 1916A, 1215; Marling v. Jones, 138 Wis. 82, 119 N. W. 931, 131 Am. St. Rep. 996, § 6910, C. L. 1913; section 25, Neg. Inst. Act; Brannan, Neg. Inst. Law, p. 98 et seq. The trial court erred in submitting to the jury the question of such notes becoming a part of the bank's assets, and of the existence of a consideration therefor. The above statements in this ¶ 2 are the views of the writer. The majority of this court, however, are unable to agree otherwise than that the question of consideration, upon the record, was for the jury.

3. *Does the evidence concerning an agreement that the note should be an accommodation for the bank to cover up the overdrafts for the bank examiner and that no legal liability should attach thereto, constitute a defense?*

The facts show that the note became a part of the bank's assets, and that there was a consideration therefor. This action is between the immediate parties. The note is subject to the same defenses as if it were nonnegotiable. Section 6943, C. L. 1913: § 58, Neg. Inst. Act. However, the plaintiff is a holder for value. Section 6911, C. L. 1913: § 26, Neg. Inst. Act. The defendants may be held liable upon the note to the plaintiff, a holder for value, notwithstanding the plaintiff, at the time of taking the note, knew the defendants to be only accommodation parties. Section 6914, C. L. 1913; § 29, Neg. Inst. Act; Neal v. Wilson, 213 Mass. 336, 100 N. E. 544. The defendants are in the position of parties who have contracted to pay for a consideration. The fact that this note was an accommodation to the bank, accepted as true, does not constitute a defense. It also was an accommodation to the publishing company. Skagit State Bank v. Moody, 86 Wash. 286, 150 Pac.

425, L. R. A. 1916A, 1215. Davidson, in a letter to the plaintiff denying liability upon the note, stated that he had executed the note as an accommodation for the company. It was further an accommodation to the dierctors of the company, whose duty, so assumed at least, it was to give attention to the overdrafts. The purpose of the note, so serving through the alleged representations made, to cover up the overdrafts and thus safely pass federal examination, likewise constituted no defense. It was the duty of the directors and the manager, too, to take up these overdrafts either by money or acceptable paper. It was their duty to meet the demands of the banking laws and the federal examiner, presumed to follow the law, in the company's transactions with the bank. It was their duty and responsibility to see that their company's transactions and indebtedness passed muster with the examiner. May they now assert successfully that their action upon this duty and responsibility, which they assumed to perform and which operated to take up the overdrafts and successfully pass federal inspection, is a defense to the obligation thereby incurred because the bank represented that the note must be so given, and, even temporarily so, in order to pass federal inspection? See Ins. Co. v. Haynes, 71 Vt. 306, 45 Atl. 221, 76 Am. St. Rep. 771. Assuredly, the many cases cited by the defendants where notes were given purely for the accomodation of a bank and without consideration are not in point. But it is urged that the bank further represented that none of the defendants should be held liable; that there should be no personal liability on the note. All of these defendants were business men, and all of them were engaged in the banking business, two of them with the plaintiff bank and two of them with the other bank. They knew and were bound to know that the banking business is fraught with public concern; that banks are permitted to do business through the courtesy and permission of the law and subject to its provisions for the protection of depositors, creditors and stockholders; that public faith and credit and honesty in business transactions are their main assets. These defendants cannot be heard to say that they did not sign this note with full understanding of its purposes and consequences. Construing this note as a part of the bank's assets and upon a consideration therefor, it was wrong for the defendants to so sign such note upon any understanding of nonliability in any event. It was wholly proper for them to consider that they might never suffer any loss or be compelled in fact to pay by reason of the potential assets of the company which Roberts explained to them. But it was and is a fraud upon

themselves, upon the bank, and upon the public to contend that an obligation, which they made their duty to assume and which in writing they did assume, was not an obligation at all. It was a fraud upon themselves, because it pretended legally in solemn written form the performance of their duty; a fraud upon the bank, because it gave assurance of legal compliance concerning their company's indebtedness, to the government, to the bank's directors, two of them the defendants, and to depositors, creditors, and stockholders. A fraud upon the public and public law, because it gave assurance that moneys, perchance, of depositors, which had been paid out for the indebtedness of the publishing company, were protected by the directors of this company, whose duty it was so to do, and also by the bank's directors. Not without understanding did they enter upon this apparent legal obligation. Not to thus perpetrate a wrong and a fraud contrary to their assumed duty and responsibility may they now assert nonliability in defense. Sections 7251, 7255, C. L. 1913; 5 L. R. A. 344. See Bank v. Forsyth, 41 Mont. 249, 108 Pac. 914, 28 L. R. A. (N. S.) 501, 510; note, 28 L. R. A. (N. S.) 501.

The above statements in this ¶ 3 are the views of the writer. The majority of this court, however, do agree that if the jury, upon a new trial, should find that there was consideration for the note, then the views of the writer, above stated, are proper.

The majority are also of the opinion, though such is not the view of the writer, that, under the evidence in the case, the question as to whether the note was for the accommodation of the bank or of the publishing company is likewise a question of fact for the jury; and, in accordance with the views of the majority, if the jury should find that the note was given for the accommodation of the publishing company, it would then be immaterial whether any present consideration was given by the bank, as it would be a holder for value under the Negotiable Instruments Act. Neal v. Wilson, 213 Mass. 336, 100 N. E. 544; Metzger v. Sigall, 83 Wash. 80, 145 Pac. 72.

### Prejudicial Error in the Record.

4. The majority of this court are of the opinion that, in any event, a new trial must be awarded for prejudicial error in the record resulting through the admission of evidence concerning the guaranty contract of Roberts and Beiseker and the wealth of Beiseker. Such evidence served purposes of bringing to the attention and consideration of the jury an in-

demnity contract that, in any event, covered and guaranteed the payment of the note to the bank and emphasized prejudicially the ability of Beiseker to make such payment. It was highly objectionable and prejudicial upon well-settled principles of law.

5. *Did the fact of the nondelivery of the note as to the defendant Davidson operate to discharge the remaining defendants from the obligation?*

The plaintiff concedes that the evidence was sufficient for the consideration by the jury of the question of conditional delivery so far as the same concerns the defendant Davidson. As between the parties, it was competent to prove a delivery by the defendant Davidson upon condition and the failure to comply with such condition imposed before delivery. Section 6901, C. L. 1913; § 16, Neg. Inst. Law; First Nat. Bank v. Miller (N. D.) 179 N. W. 997. Such an understanding and its nonfulfilment, if so found by the jury, would operate as a defense and discharge from liability. The defendants, other than Davidson, did not plead as a defense a delivery of the note upon conditions. · The trial court did not submit to the jury any such issue as to these defendants, other than Davidson. Accordingly this court expresses no opinion upon the question of conditional delivery, excepting as it affects Davidson's liability.

6. *Is the plaintiff entitled to a new trial?*

In its instructions to the jury, the trial court charged that a verdict should be returned for the defendants if they found that the note was made for the accommodation of the bank, and upon an intention to become a legal obligation; that if they found that defendants signed the note without consideration and for temporary use to cover up an overdraft of the publishing company, with the understanding that they were never to pay such note, a verdict should be returned for the defendants who so signed such note. Further, that, if they found that the note was signed by Davidson upon an express condition concerning to delivery, and that this condition was not performed, a verdict should be returned in Davidson's favor. In the separate answer of Davidson, two general defenses are alleged: The making of the note for purposes of accommodation of the plaintiff, to cover up the overdraft and satisfy the federal banking department, without any consideration and upon the understanding that the same should not become a legal obligation; and the delivery of the note upon an express condition.

A new trial must be granted at least with respect to the defendants other than Davidson. Upon their defense, as pleaded, and upon the evidence, the verdict, through error in the admission of prejudicial evidence, must be set aside. The presumption is that every fact necessary to support the verdict in favor of Davidson has been found by the jury, 4 C. J. 772. Nevertheless, the prejudicial error in the record concerned Davidson as well as the other defendants. While Davidson might prevail upon either or both of the two defenses submitted, the error nevertheless affects the verdict as to all of the defendants. Accordingly, it being impossible to determine upon which issue the jury based its verdict as to the defendant Davidson, or the extent to which the prejudicial error aided or influenced the jury in any finding upon conditional delivery, a new trial must be awarded. 20 R. C. L. 268; Funk v. Railway Co., 61 Minn. 435, 63 N. W. 1099, 29 L. R. A. 208, 52 Am. St. Rep. 608; Barrett v. Magner, 105 Minn. 118, 117 N. W. 245, 127 Am. St. Rep. 531.

The order is reversed, and a new trial ordered, with costs.

BIRDZELL and CHRISTIANSON, JJ., concur.

GRACE, C. J. (dissenting). The facts and evidence have been amply stated in the majority opinion. The controverted facts with all other facts were submitted to a jury; a verdict was returned in defendant's favor, and judgment entered accordingly. There is not only substantial but abundant evidence to support the verdict. Where that is true and there is no prejudicial reversible error in the record, the judgment should be affirmed. There is no prejudicial error in the record, and the majority opinion, in our opinion, points out none.

We are clear that the order from which appeal was taken should be affirmed.

ROBINSON, J. (dissenting). It is for the interest of the republic that there should be an end to litigation. Accordingly, when the issues in an action have been fairly submitted to a jury and a verdict rendered, it should not be set aside unless on a reasonable showing that the verdict is wrong. The plaintiff and appellant sued to recover from defendants on a promissory note made to it for $3,000 and interest. The note is made by

Davidson and indorsed by the other defendants. The answer of Davidson is that at the request of Roberts, the president of the bank, he signed the note for an accommodation and without any consideration. To the same effect is the answer of the other defendants. The case was fairly submitted, and the jury found in favor of the defendants on all the issues, and the bank appeals. Now it is certain the bank paid nothing for the note, and it did not release or surrender any drafts or securities. It solicited and secured the note as an accommodation for the purpose of making a good showing to the bank examiner. Appellant makes 40 points or assignments of error, and it seems to conclude that 40 bad points make 1 good point. The only good point would be a showing that the note was made to the bank for a valuable consideration.

In his memoranda opinion the trial judge says:

"The case was carefully tried by able counsel on both sides, and submitted to the jury upon written instructions, and the jury found a verdict in favor of the defendant. I deny the motion for a new trial on the ground that the case was carefully tried, a good record made, and, in my judgment, the instructions covered the questions of law involved in the case, and I am not prepared to say that the verdict is not in conformity with the evidence."

The instructions appear to be full and fair. The jury was told:

"The point which defendants raise is that the note in suit was never to become a part of the assets of the bank. That is the question of fact which the jury are called upon to determine, and the burden of proof is upon the defendants to establish the defense by the weight of evidence." "The burden of proof is upon defendants to establish either failure of consideration or any other defense that is alleged, and such defense must be established to your satisfaction by a fair preponderance of the evidence." "You are instructed that to constitute a consideration it is not necessary that a person executing or indorsing a note shall himself recover a consideration. It is sufficient that the person accepting the note extends either to the person making or indorsing the note, or to some one else, at his request, something of value, be it money, property, credit, or other favor which may be of benefit to such person." "If you are convinced from the evidence that the note was made without any consideration or value, and simply turned over to the plaintiff for temporary use to cover up overdrafts of the New Rockford Publishing Company, but not to pay the same, with the understanding and agreement that defendants were never to pay the note, or that it was to be used tem-

porarily by the plaintiff to get the approval of the examining officer, and not to be a part of the assets of the bank, then, and in that case, they have established their defense."

Thus the points at issue were fairly submitted and decided, and now, on appeal from the order denying a new trial, the real and narrow issue should not be obscured by a multitude of words. It is for the appellants to point out and clearly show a legal and valuable consideration for the note. The fact that it was given to cover up the condition of the bank is neither a consideration nor an estoppel. The accommodation did the bank no injury. The bank is in no position to object to it. In appellant's brief (p. 71) it is said:

"There was a valuable consideration for the note. It was given for the purpose of taking care of or covering up overdrafts which the bank held against the New Rockford Publishing Company, and for the purpose of reducing notes previously given."

Truly it does appear that the note was given to cover up, but it does not appear that it was given for the renewal, or even the accommodation of prior notes. There is no showing that it was given or received in payment or discharge of any debts. The contention amounts to no more than this: That the defendants were directors of the publishing company, and hence were under some obligations to pay its debts and overdrafts. And that may be true, but the note was not given to pay any such debts or overdrafts, and defendants were under no legal obligation to pay the same. Of course if the note had been given to the publishing company and it had transferred the same to the bank in due course, and for value, then there would be no question on the consideration. Then the bank would be a holder for value the same as in case of Bank v. Meyer, 30 N. D. 392, 152 N. W. 657. But clearly the note in question was not given to the bank in that way. The bank received it directly as accommodation paper, and it was not at liberty to use or transfer the note. It was made to cover up defaults and overdrafts, and to prepare the way for the bank examiner. If the bank had transferred the note to an innocent purchaser for value, then, on payment of the same, the defendants could have recovered against the bank. We should not try to obscure the issues by a multitude of words or by talking around the real issue. The verdict is right. The note was given only as an accommodation and a cover-up.

## On Rehearing.

PER CURIAM. A reargument of this case was ordered, upon which the parties advanced contentions as follows:

On behalf of the defendant, that the court erred (1) in holding that the note was delivered to become a part of the assets of the bank; (2) in holding that prejudicial error was committed in admitting the testimony relative to the guaranty contract between Roberts and Beiseker on one hand and the bank on the other; and (3) in admitting evidence to prove the wealth of Beiseker. On behalf of the defendant and respondent Davidson it was argued that the error or errors upon which the reversal is based in the principal opinion were not such as to entitle the plaintiffs to a new trial against him. These contentions are controverted by the appellant.

The majority of the court is still of the opinion that the note in suit was delivered for the purpose of becoming a part of the assets of the bank, or in renewal of other notes given for that purpose. This conclusion, in the opinion of the majority, necessarily follows from the testimony of the defendants themselves, who stated expressly that such notes were given "to take the place of" the debt owed by the publishing company and to "cover up" the overdraft of the publishing company. Obviously, it could not take the place of the debt owed by the publishing company on the books of the bank or cover up the overdraft without being entered as an asset in the "bills receivable" account of the bank. No person consenting to such an arrangement is in a position to say that a note, so delivered, did not become an asset. For the purpose of this question, it is immaterial whether the asset be enforceable or not. In our opinion, the plaintiff had a right to have the case submitted to the jury from the standpoint of the note being an asset, subject to whatever legal defense the defendants might otherwise have, and it was error for the court to submit this question as one of fact. Whether this error alone was sufficiently prejudicial to require a reversal we need not determine.

The previous holding with respect to the admission of prejudicial evidence relating to the guaranty contract and to the wealth of Beiseker was to the effect that the evidence relating to this contract, coupled with that concerning Beiseker's wealth, was prejudicial. It is pointed out in the petition for rehearing that the appellant is not in a position to complain of the evidence in question because proper objections were not

made upon the trial. The record shows that when the guaranty was first mentioned at the trial, the testimony was stricken out, on motion of the plaintiff's attorney, on the ground that it was irrelevant to any issue in the case. Following this, however, and during the cross-examination of the defendant's witnesses, the guaranty was referred to several times, and the testimony was allowed to go to the jury. The manner in which the fact was brought out will be seen from the following, taken from the cross-examination of the defendant Stickney. Referring to certain occurrences at a directors' meeting, held after the change in the ownership of the bank, he was questioned, concerning a conversation in which the note in suit and others were mentioned as accommodation paper, whereupon he testified:

"Q. Well, just how did it come up? now tell us that. A. Well, as I told you, the entire situation developing out of this change and on the guaranteeing of the paper, made by Beiseker, covering all the paper and the general situation was under discussion. That is the facts, and they were talked at different times, and one of these statements—this particular fact was mentioned. * * *

"Q. When you said to these men that this was accommodation paper that was in this bank, signed by Mr. Carson and myself, was accommodation paper, they absolutely made no remark about it at all—just let it drop right there? A. No; they said it was immaterial to them; the bank would protect it anyway (was protected anyway?)

"Q. And they said that it was purely immaterial to them? A. No, not necessarily that, but words to that effect.

"Q. What were the words? A. I am simply giving you the sum and substance of the talk; they said they weren't concerned with that; that they had the guaranty. The guaranty was short, and I read it myself.

"Q. Who was it that said that? They didn't say it in unison, did they? A. No; I think the conversation at that time was directed to Mr. Aas, and I think he handed me the contract covering the guaranty.

"Q. So you think it was Mr. Aas at that time said they weren't concerned in the matter as to whether it was accommodation paper or not, because they had the guaranty? A. Yes, sir. * * *

"Q. And you knew at that time you were claiming and that you didn't owe that note? A. I knew at that time that the bank was depending upon the guaranty of Beiseker."

As this testimony was elicited by the attorney for the plaintiff, upon cross-examination, the error, if any, in its admission, in so far as prejudicial to the plaintiff, is not available on appeal. But, though the plaintiff cannot complain of the evidence relating to the guaranty contract, it does not follow that it cannot avail itself of the prejudicial error, if any, in the admission of the evidence as to Beiseker's wealth. Immediately after the cross-examination, partially quoted above, was concluded, one of the defendant's attorneys upon redirected examination inquired as follows:

"Q. You say you saw a written guaranty of all these notes signed by Mr. Beiseker? A. Yes, sir.

"Q. Did you know Mr. Beiseker, have you met him, or just know him by reputation? A. Yes, sir.

"Q. You knew him to be a very wealthy man, didn't you?

"Mr. Bangs: That is objected to as irrelevant, incompetent, and immaterial.

"The Court: Objection sustained.

"Mr. Lambert: We simply want to show that his guaranty of these notes was good. We object to anything that was not an exhibit in this case.

"The Court: You do not know just what the form of that guaranty was?

"Mr. Lambert: We haven't got it. We would be glad to have it and offer it in evidence if they will produce it.

"The Court: The question in my mind is whether the guaranty was a guaranty of the apparent assets of the bank without respect to a particular instrument.

"Mr. Lambert: I do not know what it is, but it is my understanding that it is a guaranty of all the notes that were turned over, guaranteeing that there would be no loss on the notes.

"The Court: In other words, a guaranty of the assets of the bank.

"Mr. Lambert: Not of the assets, of the notes.

"The Court: Of course they are assets.

"Mr. Lambert: Yes, some of the assets, but there might be others.

"The Court: I will overrule the objection.

"Witness: A. I know that he is reputed to be a very wealthy man.

"Q. What was your idea then and now as to his guaranty in regard to making any notes or these notes good, or any of the assets of the bank or all of the assets of the bank?

"Mr. Bangs: That is objected to as irrelevant, incompetent, and immaterial.

"The Court: Objection overruled.

"Witness: A. That guaranty will make them absolutely good in my opinion.

"Q. Did you believe by reason of this guaranty that that paper was good paper in the bank at the time you signed this report or list of notes he has spoken of?

"Mr. Bangs: That is objected to as irrelevant, incompetent, and immaterial, and calling for a conclusion of the witness.

"The Court: Objection overruled.

"Witness: Yes, absolutely."

We are of the opinion that this evidence is not rendered competent by reason of the previous admission of testimony relating to the existence of the guaranty contract. It may well be that the facts transpiring at a certain meeting of directors could not be fully elicited without narrating a conversation which would disclose the existence of the guaranty contract. But from this it does not follow that the defendant is entitled to show that the plaintiff is fully indemnified from any loss incident to failure to recover upon the note in suit, by reason of the fact that the guaranty contract is an obligation of a person of adequate means. The wealth of the guarantor is foreign to any issue in the case. His ability to meet payment of the entire amount affords no more legal reason for denying recovery against the defendants than his lack of means would afford for a judgment favorable to the plaintiff. Such testimony can only serve to prejudice a fair trial. It should be excluded for every reason that prevails in excluding indemnity insurance in casualty litigation. See Beardsley v. Ewing, 40 N. D. 373, 168 N. W. 791, and authorities therein cited.

But the respondents argue that, inasmuch as it is sought to visit censure upon them for certifying, as a part of the assets of the bank, paper which they knew to be for the accommodation of the bank, and consequently as not representing an enforceable asset in its hands, they should be permitted to show that no prejudice could have resulted from their act in so doing by reason of there being a sound guaranty behind the notes. We do not regard this circumstance as sufficient justification for resort to such prejudicial, incompetent evidence. All of the defendants admitted being parties to a transaction whereby representations were

to be made to the Comptroller of the Currency that·they were indebted to the bank for an amount equivalent to the publishing company's over-draft, whereas, in fact, an arrangement existed according to which they were not to be· held thus liable. This arrangement, according to the testimony of all the defendants, was made long prior to the existence of the Beiseker guaranty. Hence the moral and legal quality of their act is not reflected in its true light by being linked with the guaranty. More-over, even though Beiseker's guaranty made the paper, absolutely good, the continued representation of the notes as the liability of those who had signed them was a fraud on the examining authorities. We adhere to our previous holding that the admission of this evidence was prej-udicial.

We have carefully reconsidered the record of the trial, with a view to determining ·whether or not the errors which require a reversal of the judgment were such as to destroy the probability of a fair trial of the plaintiff's rights as against Davidson. · While he was represented at the trial by counsel who did not appear· for the other defendants, and though it appears that his counsel separately examined witnesses with a view to establishing ·his particular defenses, yet the record shows he reaped the full·benefit of the testimony offered on behalf of other de-fendants. It·also shows that in instructing the jury the trial court did not distinguish between Davidson and the other defendants, except in so far as was necessary to present the issue of conditional delivery which was submitted by Davidson alone. In this state of the record we are of the opinion that the·interests of justice require a new trial as to Davidson.

Justice Bronson concurs·in the above per curiam, subject to his per-sonal views expressed in the original decision herein.

Judgment reversed, and new trial granted.

BIRDZELL, BRONSON, and CHRISTIANSON, JJ., concur.