O. L. ENGEN, as Receiver of the Scandinavian-American Bank of Fargo, North Dakota, Respondent, v. FRED MATTHYS, Appellant.

(196 N. W. 550.)

**Bills and notes — maker held estopped to assert accommodation character of note or to rely on agreement that instrument was not regarded as note.**

1. Where one gives a promissory note so that it may be used for the purpose of making the assets of a bank appear stronger than they actually are, and where the bank subsequently fails, the one so giving the note is, in a suit by the receiver, representing creditors, estopped to assert the accommodation character of the instrument or to rely upon an agreement that the instrument was not to be regarded as a note. Vallely v. Devaney, 49 N. D. 1107.

**Appeal and error — refusal to permit maker to prove conspiracy held harmless.**

2. Where one is estopped, as against a receiver, to set up defenses arising out of the accommodation character of the instrument, he is not prejudiced by rulings which prevent him from establishing a conspiracy consisting in a design to obtain his note for the ostensible purpose indicated and subsequently using it as security for advances by the party accommodated to third parties. He is not liable on account of the advances but on account of the estoppel.

**Appeal and error — instructions on burden of proof on holder in due course held harmless.**

3. Since the receiver may recover notwithstanding the accommodation character of the instrument and though not a holder in due course, the maker is not prejudiced by instructions relating to the burden of proof which devolves upon a holder in due course.

Opinion filed November 15, 1923. Rehearing denied January 4, 1924.

Appeal and Error, 4 C. J. §§ 2993 p. 1009 n. 3; 3015 p. 1035 n. 54 New. Bills and Notes, 8 C. J. §§ 449 n. 286 n. 19; 1414 p. 1088 n. 77.

Appeal from the District Court of Cass County, *Englert*, J. Affirmed.

*Divet, Holt, Frame & Thorp*, for appellant.

Note.—(1) Liability of accommodation maker of note, see 3 R. C. L. 1137; 1 R. C. L. Supp. 998; 4 R. C. L. Supp. 237.

Ostensible agency may be proven by the acts of the parties, and when there is some evidence of agency the acts and declarations of the agent are admissible upon the subject. Buchanan v. Lee, 37 N. D. 33; Lake Grocery Co. v. Chiostri, 34 N. D. 386.

"The declarations of the alleged agent are not competent to prove such agency although they are accompanied by acts purported to be acts of agency, but of course, such declarations and acts are competent if there is proof of former similar acts or declarations recognized or approved by the principal." 2 Jones, Ev. p. 442, § 256.

The fact of a conspiracy may be proved by any competent evidence. The conspiracy may, of course, be shown by direct evidence, and it is apprehended should be so proved if this character of evidence is attainable. Direct evidence is, however, not indispensable. Circumstantial evidence is competent to prove conspiracy. Proof of the combination charged, it has been said, must almost always be extracted from the circumstances connected with the transaction which forms the subject of the accusation. The nature of the crime usually makes it susceptible to no other proof, and the rule which admits this class of evidence applies equally in civil and criminal cases. Circumstantial evidence, if sufficiently strong, may outweigh the positive statement of a party or witness. 12 C. J. §§ 226, 227.

Proof of concert of action in carrying out a criminal purpose or plan is circumstantial evidence of a confederation to effect such purpose or to join in such plan, and the actual agreement to enter into the conspiracy need not be proved by direct evidence. State v. Cain (Iowa) 111 N. W. 443; State v. Gadboys (Iowa) 56 N. W. 272; Kelly v. People (N. Y.) 14 Am. Rep. 342; 12 C. J. p. 637, § 230. See notes to 12 C. J. p. 637, in the first column.

A judge presiding at a trial while instructing the jury should be careful not to mislead or to suffer them to be misled by others. He must not give of his own motion or at the request of either party an instruction which as applied to the facts of the particular case is misleading or well calculated to mislead, or which will tend to confuse the jury in the consideration of the issues in the case. 14 R. C. L. p. 775.

A further reason is that conflicting and contradictory instructions in effect leave the jury without instructions to guide them with refer-

ence to the law arising upon the evidence in the cause. 14 R. C. L. pp. 777, 778.

When the defendant offered evidence of the true consideration for the note, it was incumbent on the bank to show that it or someone through whom it claimed title was a holder in due course. No such evidence was offered. The plaintiff merely contented itself with the proof of a prima facie case which, of course, would have been sufficient had there been no evidence tending to establish a defense. But when evidence was offered impugning the right of the defendant to recover the face of the note, a prima facie case is no longer sufficient but is required to be supplemented by evidence showing that the plaintiff is a holder in due course. Comp. Laws 1913, § 6944. First Nat. Bank v. Carroll, 46 N. D. 62, 179 N. W. 664.

Certain it is the note was made without any consideration. It was made to the Northwestern Underwriters Association, a Grand Forks insurance agency. He made the note, not that it might be transferred, but that the company might use it as evidence to evade the Blue Sky Law and to mollify the insurance commission. The transfer of the note was an act of bad faith. . . . Then it appears that the bank did not pay for the note in cash, or take it in the usual course of the banking business. The note was turned over to the bank with several other notes in exchange for a lot of notes held by the bank. Farmers Secur. Bank v. Nelson, 46 N. D. 106.

*Lovell & Horner,* for respondent.

These notes were given, as they testified, to cover up those overdrafts and as a means to withstand the examination of the Federal bank examiner. This very understanding and purpose, as stated, involved the necessity of such notes becoming a part of the assets of the bank. It does not lie well in the mouths of the defendants to say that these notes were not to become a part of the assets, when the very purpose and understanding for which they made them was in order that they might become a part of the assets. First Nat. Bank v. Davidson, 188 N. W. 194.

BIRDZELL, J. This is an action on a promissory note for $3,000 executed December 20, 1919, payable to the order of F. B. Wood and by him transferred to the Scandinavian American Bank of Fargo. The

case was tried in the district court of Cass county where judgment was rendered upon a verdict in favor of the plaintiff. A motion for new trial was later made and denied. The defendant has appealed, both from the judgment and from the order denying the motion for a new trial. The facts may be briefly stated as follows: During the latter part of September and including the first day of October, 1919, the Scandinavian American Bank of Fargo was subjected to an examination by a deputy bank examiner acting under the direction of a majority of the members of the state banking board. The bank was found to contain a large amount of objectionable loans and assets and was closed by the banking board. While thus closed, an original proceeding was brought in this court for the purpose of enjoining the majority of the members of the banking board (the attorney general and secretary of state) and the agents of the board from interfering with the control of the bank by the public examiner. An ex parte order was issued placing the public examiner in charge and restraining interference with his control. An order to show cause was returnable in the matter on October 15, 1919. Between the date of obtaining this order and its return the defendant Matthys was called to the bank. On October 11th, in the back room of the bank he conferred with William Lemke, who was acting as attorney for the public examiner, A. C. Townley, who was prominently identified with the Nonpartisan League, and Spurgeon O'Dell, a vice president of the Scandinavian American Bank. Lemke called the defendant's attention to an itemized statement of $153,000 of assets in the bank that were objectionable to Langer, the attorney general, and explained that these assets consisted largely of postdated checks and small notes given by farmers. He stated that it was desired to have additional security to support these assets and that they wanted to get, quoting the defendant's testimony, "some good farmers' notes for larger amounts, so we can show the supreme court that this item is adequate security." Lemke also assured him that he would never have to pay it; that it would not be used as a note and that they might not have to show it, but he wanted it so he would have it to make an impression upon the court. Townley stated, in that same connection, that he, the defendant, didn't understand, and he explained that the League had been financed on accommodation notes from the beginning; that no one

ever had to pay them or lose a penny on them, so he, the defendant, would never have to pay but would soon have the note back. O'Dell sat at a table and had one of the packages of notes in front of him. The defendant knew O'Dell as an officer of the bank, and the latter stated that the bank was sound and all right; that if it had not been for the small notes and postdated checks, it wouldn't have been closed; that the defendant would never have to pay it and that they would not use it as a note. Thereupon he executed a note in the sum of $5,000 payable to the bank. The manner in which this note was carried or used between October 11th and November 6th does not appear in the record, but it does appear that it was entered on the note register on November 6th as an asset of the bank and that the bank had paid for it the sum of $2,482.62. This amount represented an overdraft of the League Exchange then in the bank. On the 17th day of November this overdraft was paid and the $5,000 note surrendered prior to its maturity to F. B. Wood. The defendant was later (about December 20th) called to Fargo and met Lemke and Wood at the League headquarters in the Pioneer Life Building. He was informed that they no longer needed his note for $5,000 but that the $3,000 note would be sufficient, that they would return to him the note for $5,000, and that they desired him to execute a $3,000 note as a continuation. According to the defendant's testimony, Lemke said to him "we are going to give you your $5,000 note back to you, and I will ask you to replace it with a smaller one, as a continuation of the larger one. I said to him 'what is the idea of giving me back the larger one and wanting me now on a smaller one?' Mr. Lemke said that they didn't need me now on any larger one than necessary. They were reducing them all. Mr. Wood spoke and said that they had collectors out all the time and were collecting money right along, and I would soon have it back. It was the same purpose and the same need—they would never use it as a note." The purpose, he explained, was to show the supreme court, to put it in the Scandinavian American Bank and not use it as a note, and just keep it to show; so he signed the note and that was all there was to it, and he "just went out and went away." The note he signed was a $3,000 note dated December 20, 1919, payable six months after date to the order of F. B. Wood, with interest at 8 per cent per annum. Wood, within two days of its date, took the

note to the Scandinavian American Bank, indorsed it and took in exchange for it a cashier's check for $3,000 payable to himself. This cashier's check is both dated and stamped "Paid" December 22, 1919, and the amount of it was credited on the books of the bank to the Publishers' National Service Bureau, a Nonpartisan League enterprise.

The appellants contend that the lower court erred in sustaining objections to certain testimony which they claim had a direct tendency to prove a conspiracy. Through these rulings the defendant was prevented from showing that Wood and other officers of the League Exchange had misused notes similar to the Matthys' notes. It is argued that the defendant should have been permitted to introduce evidence to prove a general conspiracy to defraud those from whom it was possible to obtain notes such as the Matthys' notes—the fraud consisting in the obtaining of the notes for an ostensible purpose which would appeal to an adherent of the league and, after obtaining them, using them for the purpose of giving credit to some one of the various league enterprises. The record discloses that the fullest inquiry was permitted into all the transactions between the bank and the defendant, which resulted in the giving of the note in question. It appears from the defendant's own testimony that he gave the original note for the purpose of strengthening the showing of the bank's assets, which were weakened or at least objectionable on account of comprising a large amount of small notes and postdated checks originating in Nonpartisan League enterprises of one sort and another. The reasonable interpretation of his testimony is, then, that his note was to be used as ostensibly supporting those assets; that, if necessary, it was to be shown to the supreme court as so supporting them. Obviously, it could not be thus used without appearing as an asset of the bank (First Nat. Bank v. Davidson) 48 N. D. 944, 188 N. W. 194, which the bank either owned or which it could enforce as collateral. It does appear that the $5,000 note was used directly for the purpose of wiping off the books of the bank an overdraft of the League Exchange for $2,482.62, which was later paid, and that the $3,000 note was used indirectly in behalf of the Publishers' National Service Bureau. But it is not the circumstance of such a note being so used or misused that renders the maker liable thereon in a suit such as the present; hence the fraud, if

any, in so using it results in no prejudice to the maker. We have held in the case of Vallely v. Devaney, 49 N. D. 1107, 194 N. W. 903, that one giving a note to a bank for the purpose of enabling it to pass an examination is, in case of the subsequent failure of the bank, estopped to assert the defense of accommodation when sued by the receiver; and that likewise he is precluded from asserting fraud inducing the giving of the instrument where to permit him to rely upon the fraud as a defense would, in effect, be to aid him in the perpetration of a fraud upon others. He can not be allowed to take advantage of his own wrong. Where such principles of estoppel are applicable, the liability of the defendant and the maker of a note, it will be seen, is in nowise dependent upon the giving of any value for the note by the bank, and we can see no reason for depriving the receiver, as a representative of the creditors, of the right to invoke the estoppel on account of the fact that the bank actually did advance money to third parties on the strength of the note contrary to the understanding with the maker. In other words, if the receiver could enforce the instrument, though given solely for the accommodation of the bank, he should be equally able to enforce it although the bank has actually used the instrument as security for subsequent advances to third parties. Since the defendant testified that the note in suit was a continuation of the $5,000 note and was given for the same purpose, it must follow that it was given in lieu of the larger note and to be equally binding. Hence, any estoppel applicable to defenses to the former is equally applicable to the latter. For these reasons we are satisfied that the defendant was not prejudiced by any restrictions affecting the proof of a conspiracy such as that pleaded and relied upon.

We do not deem it necessary to comment at length upon the various assignments of error that are argued in the brief. Suffice it to say that they are disposed of in what has been said above, as it must be apparent, in the view we take of the appellant's liability, that he could not be prejudiced by the rulings on evidence complained of, nor by the instructions concerning the burden of proof as between a holder in due course and a maker, nor by the statement of the trial court regarding conspiracy. We deem it proper to say, however, that this case was tried in the lower court and the appeal to this court prepared for submission before the announcement of the decision in Vallely v. Devaney,

supra. The principles therein announced and applied are practically decisive of this case.

The judgment and order appealed from are affirmed.

BRONSON, Ch. J., and NUESSLE and CHRISTIANSON, JJ., and JANSONIUS, Dist. J., concur.

JOHNSON, J., being disqualified, did not participate; Honorable FRED JANSONIUS, Judge of the Fourth Judicial District, sitting in his stead.