PIONEER STATE BANK, a North Dakota Banking Association, Roger B. West, Receiver and Trustee of the Pioneer State Bank, and State Bank of Towner, a North Dakota Banking Association, Plaintiffs and Appellees,

v.

Hal JOHNSRUD and Miles Johnsrud, Defendants and Appellants.

and

The Harold JOHNSRUD Estate, Florence Johnsrud as the Personal Representative of the Estate of Harold Johnsrud, and Florence Johnsrud, personally, Defendants, Third-Party Plaintiffs and Appellants,

v.

Hayden THOMPSON, Third-Party Defendant and Appellee.

Civ. No. 9632.

Supreme Court of North Dakota.

Sept. 26, 1979.

Rehearing Denied Oct. 25, 1979.

Lamb, Schaefer, McNair & Larson, Fargo, for Pioneer State Bank and Roger B. West, Receiver and Trustee of the Pioneer State Bank, plaintiffs and appellees; no appearance.

Kenner, Halvorson & Sturdevant, Minot, for State Bank of Towner, plaintiff and appellee; argued by Michael G. Sturdevant, Minot.

Jonathan T. Garaas, Garaas Law Firm, Fargo, for defendants, third-party plaintiffs and appellants; argued by Mr. Garaas.

Lundberg, Conmy, Nodland, Rosenberg, Lucas & Schulz, Bismarck, for third-party defendant and appellee; no appearance.

ERICKSTAD, Chief Justice.

This is an appeal by the Harold Johnsrud Estate, Florence Johnsrud, as the personal representative of the Estate of Harold Johnsrud, and Florence Johnsrud, personally, defendants and appellants (hereinafter referred to as the Johnsruds), from a summary judgment granted by the McKenzie County District Court in favor of the State Bank of Towner in the amount of $113,-969.99, plus interest at the rate of eight percent per annum. This represents the amount of a promissory note signed by Florence Johnsrud and her husband, the late Harold Johnsrud, on January 13, 1976. We reverse the order granting summary judgment and remand the matter for trial.

Four promissory notes signed by various combinations of Hal Johnsrud, Miles Johnsrud, Florence Johnsrud, and Harold Johnsrud are the subject of this appeal.

In 1972, Hal and Miles Johnsrud, sons of Florence and Harold, became involved in a cattle venture with Hayden Thompson, then the president of the Pioneer State Bank in Towner, North Dakota. Hal and Miles purchased some cattle from Thompson and financed the purchase through the Pioneer State Bank. In 1974, when the two were unable to pay off the notes, in order to refinance their loans they executed several renewal notes with Farmers Home Administration guaranteeing 80%, and as additional security, Harold Johnsrud co-signed on behalf of his two sons.[1] Issues of validity and genuineness of these four renewal notes have been raised by Hal and Miles Johnsrud in their affidavits opposing the motion for summary judgment. Both deny execution of the four promissory notes by themselves as well as by their father, Harold Johnsrud. Hal and Miles Johnsrud filed bankruptcy on or about August 18,

---

1. On January 13, 1976, Harold and Florence Johnsrud signed a promissory note in the amount of $113,969.99. This was applied on notes as follows:

Miles Johnsrud—
$ 5,810.40 principal and $   682.05 interest—note # 88450
$12,919.98 principal and $ 1,530.05 interest—note # 88451
$ 8,000.00 principal and $   945.31 interest—note # 88136

Hal Johnsrud—
$   403.50 principal and $    47.36 interest—note # 88456
$70,000.00 principal and $10,169.18 interest—note # 88455
$ 3,462.16 principal           —note # 88454

The four promissory notes referred to include the two notes allegedly signed by Miles and Harold Johnsrud for $5,810.40 and $12,919.98, dated October 15, 1974, and October 19, 1974, respectively, and the two notes allegedly signed by Hal and Harold Johnsrud for $70,000 and $403.50, dated August 26, 1974, and October 19, 1974, respectively.

1977, and the plaintiffs are presently enjoined from seeking a judgment against them.

On January 13, 1976, Harold Johnsrud met Hayden Thompson in a restaurant in Watford City, North Dakota, and there executed a promissory note in the amount of $113,969.99 plus interest at the rate of eight percent per annum. Florence Johnsrud was not present at the time her husband signed the note on January 13th. Prior to the time Thompson and his two business associates, B. K. Keller and Luverne Kreft, left Watford City, Keller and Kreft went to the Johnsrud ranch to obtain Florence's signature. What was said at the Johnsrud ranch that day is not entirely clear, but the Johnsruds contend, in their answer and affidavits opposing summary judgment, that Florence signed the note only after being told that (1) her two sons would be unable to obtain their emergency livestock loans if she failed to sign; (2) both signatures on the note were needed only for the purpose of making the bank records look more favorable to bank and government officials; (3) her signature was necessary because of a new banking regulation requiring the signature of the wife on all promissory notes; and (4) the Pioneer State Bank would never seek to enforce the note against them.

On April 1, 1976, Harold Johnsrud was killed in a farm accident on his ranch near Watford City. On July 29, 1976, this lawsuit was commenced against the Johnsruds by the Pioneer State Bank. Their answer, raising the same affirmative defenses at issue in this appeal, was served on September 15, 1976. On August 23, 1976, a third party complaint was served on Hayden Thompson.

On November 26, 1976, the Pioneer State Bank was ordered closed by the North Dakota State Bank Examiner, the Commissioner of the Department of Banking and Financial Institutions, on the asserted grounds that the bank was insolvent. On January 5, 1977, Roger B. West was appointed receiver of the assets of the Pioneer State Bank by the North Dakota State Banking Board.

On January 14, 1977, most of the assets and liabilities of the Pioneer State Bank, including the note in the amount of $113,-969.99, were transferred by Roger West to the State Bank of Towner, a newly-chartered banking association.

On June 10, 1977, the Pioneer State Bank moved to join additional parties as plaintiffs and defendants to the lawsuit, and also moved for summary judgment. Roger B. West and the State Bank of Towner were joined as plaintiffs to this lawsuit and Hal and Miles Johnsrud as defendants. After a hearing on December 26, 1978, summary judgment was granted in favor of the State Bank of Towner. On January 22, 1979, judgment was entered in the amount of $113,969.99 plus interest at eight percent per annum, amounting to $26,922.24, for a total judgment of $140,892.23.

The sole issue to be determined by this court is whether or not genuine issues of material fact exist so as to preclude the granting of summary judgment under Rule 56 of the North Dakota Rules of Civil Procedure.

The purpose of summary judgment, under Rule 56, N.D.R.Civ.P., is to allow for the prompt disposition of a controversy on the merits, without a trial, when there is no real dispute as to the salient facts or when only a question of law is involved. *St. Paul Fire & Marine v. Amerada Hess Corp.*, 275 N.W.2d 304, 306 (N.D. 1979). Summary judgment presupposes no need for a trial. A motion for summary judgment should be granted only if, after reviewing the evidence in a light most favorable to the party against whom summary judgment is demanded, there is no genuine issue of any material fact, and the party seeking summary judgment is entitled to it as a matter of law. *Farmers Elevator Co. v. David*, 234 N.W.2d 26, 29 (N.D.1975).

In granting the motion, the court may consider the pleadings, depositions, admissions, affidavits and interrogatories, and inferences to be drawn therefrom. *Albers v. NoDak Racing Club, Inc.*, 256 N.W.2d 355, 358 (N.D.1977).

The district court based its order for summary judgment primarily on the early North Dakota cases of *Engen v. Matthys*, 50 N.D. 487, 196 N.W. 550 (1923), and *Vallely v. Devaney*, 49 N.D. 1107, 194 N.W. 903 (1923).

In *Vallely*, several cattlemen executed promissory notes after being assured by the bank president that they would incur no personal liability thereon. The purpose for executing the notes was to deceive the bank examiners by making the notes appear as assets of the bank. When the bank subsequently failed, it was placed in receivership and the receiver brought suit to collect the notes. This court held that the cattlemen were estopped from asserting the defense of fraud or accommodation against the receiver because of their participation in the fraudulent transaction. *Vallely, supra*, 194 N.W. at 906.

Similarly, in *Engen*, another 1923 decision involving comparable facts, this court held that when one executes a promissory note for the purpose of making the assets of a bank appear stronger than they actually are, when the bank subsequently fails, the maker of the note is estopped, in a suit by the receiver, from asserting the accommodation character of the instrument and from asserting the existence of an agreement that the instrument was not to be regarded as a note. *Engen, supra*, 196 N.W. at 552.

The district court, relying upon *Vallely* and *Engen*, granted the motion for summary judgment, saying:

"And my view is that if the receiver can bring the suit and avoid these defenses, certainly a purchaser or assignee of the notes can also avoid the defenses."

Counsel for the Johnsruds attempted to draw the court's attention to Section 41–03–35 of the North Dakota Century Code, relating to the rights of a holder in due course, but the district court found it inapplicable, saying:

"I don't think we are concerned with holder in due course here . . ."

and

"Even so I regard it as an assignment rather than a negotiation of the note. An assignee is sufficient under my view. He doesn't have to be a holder in due course to derive this protection."

Both the district court and counsel for the State Bank of Towner rely on *Vallely* and *Engen* to support the motion for summary judgment. However, both decisions are distinguishable from this case on the facts. To those who would argue that they are not distinguishable, our answer is that aside therefrom they can no longer be considered in light of the adoption of the Uniform Commercial Code.

First, *Vallely* and *Engen* are distinguishable from this case in that (1) the lawsuits in *Vallely* and *Engen* were initiated by the receiver of the insolvent bank whereas this lawsuit was instituted by the Pioneer State Bank prior to its being closed by the State Bank Examiner; (2) in *Vallely* and *Engen*, the plaintiff-receivers had no notice of any defenses on the promissory notes at the time the banks were placed into receivership, whereas in this case, both Roger West, the receiver, and the State Bank of Towner had such notice because the lawsuit against the Johnsruds had commenced, and the answer had been served, several months prior to the time the note was transferred to the State Bank of Towner through the receiver; (3) in both *Vallely* and *Engen*, the evidence descriptive of the transactions, including the testimony of the maker of the notes is that the promissory notes were signed for the sole purpose of strengthening the assets so as to satisfy the bank examiners, whereas the evidence is not so apparent in this case [*Vallely, supra*, 194 N.W. at 905, *Engen, supra*, 196 N.W. at 552]; and (4) this court in *Vallely* stated that nothing was decided with respect to the liability of parties upon notes given to the bank when the bank itself institutes the lawsuit, which is what occurred in this dispute. *Vallely, supra* at 906.[2]

**2.** The reluctance of this court to apply the rules of law enunciated in these two decisions is

further supported by the recent decision of *Beck v. Lind*, 235 N.W.2d 239 (N.D.1975).

■ As previously noted, the district court stated that it regarded the transfer of the note as an assignment rather than a negotiation, and that therefore the State Bank of Towner need not be a holder in due course in order to recover on the promissory note. This court has held in the past that an assignee of a chose in action takes subject to any defenses existing at the time of the assignment or before notice of the assignment. *Farmers Ins. Exchange v. Arlt*, 61 N.W.2d 429, 437 (N.D.1953). Ordinarily an assignee has no greater rights against a debtor than the assignor had. *First National Bank of Minot v. MacDonald Const. Co.*, 137 N.W.2d 667, 672 (N.D.1965). The common law of assignment remains in effect in North Dakota, as does the law relating to debtor and creditor relationship (Title 13, N.D.C.C.), despite the adoption of the Uniform Commercial Code. *Willow City v. Vogel, Vogel, Brantner & Kelly*, 268 N.W.2d 762, 767 (N.D.1978).

■ Intervention by the receiver after the execution of the renewal note, but prior to the transfer of the note to the State Bank of Towner, is of little significance with respect to the rights of the bank. The receiver merely holds the property coming into his hands by the same right and title as the insolvent bank for whose property he was appointed receiver, subject to liens, priorities, equities, privileges, claims, and defenses existing at the time of appointment. *See City of Williston v. Ludowese*, 53 N.D. 797, 208 N.W. 82 (1926); 65 Am.Jur.2d, *Receivers* § 165 (1972). The receiver actually possesses no rights superior to that entity for whom he was appointed. *See also* 3 Michie, Banks and Banking 274–75 (1974).

Finally, with these considerations in mind, the significance of the enactment of the Uniform Commercial Code in North Dakota, effective as of July 1, 1966, becomes obvious. Chapter 41–03, N.D.C.C.

The Uniform Commercial Code provides that a promissory note, if it complies with requirements of Section 41–03–04(1), N.D. C.C. (U.C.C. § 3–104),[3] is a form of negotiable instrument under Chapter 41–03. *See* Section 41–03–04(2)(d), N.D.C.C. Therefore, it is important to determine the status of the holder of the promissory note so as to specify what claims or defenses on the instrument the holder will take free of.

Under the Code, a "holder in due course" is given the greatest protection. To qualify as a holder in due course, one must fall within the definition enunciated in Section 41–03–32, N.D.C.C. (U.C.C. § 3–302), which reads as follows:

"41–03–32. (3–302) *Holder in due course.*—1. A holder in due course is a holder who takes the instrument

a. for value; and

b. in good faith; and

c. without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.

2. A payee may be a holder in due course.

3. A holder does not become a holder in due course of an instrument:

a. by purchase of it at judicial sale or by taking it under legal process; or

b. by acquiring it in taking over an estate; or

**3.** "41–03–04. (3–104) *Form of negotiable instruments—'Draft'—'Check'—'Certificate of deposit'—'Note'.*— 1. Any writing to be a negotiable instrument within this chapter must
    a. be signed by the maker or drawer; and
    b. contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this chapter; and
    c. be payable on demand or at a definite time; and
    d. be payable to order or to bearer.

2. A writing which complies with the requirements of this section is
    a. a 'draft' ('bill of exchange') if it is an order;
    b. a 'check' if it is a draft drawn on a bank and payable on demand;
    c. a 'certificate of deposit' if it is an acknowledgment by a bank of receipt of money with an engagement to repay it;
    d. a 'note' if it is a promise other than a certificate of deposit.
. . . . ." § 41–03–04, N.D.C.C. (U.C.C. § 3–104).

c. by purchasing it as part of a bulk transaction not in regular course of business of the transferor.

4. A purchaser of a limited interest can be a holder in due course only to the extent of the interest purchased."

The rights of a holder in due course are set forth in Section 41–03–35, N.D.C.C., as follows:

"41–03–35. (3–305) *Rights of a holder in due course.*—To the extent that a holder is a holder in due course he takes the instrument free from

1. all claims to it on the part of any person; and

2. all defenses of any party to the instrument with whom the holder has not dealt except

a. infancy, to the extent that it is a defense to a simple contract; and

b. such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and

c. such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and

d. discharge in insolvency proceedings; and

e. any other discharge of which the holder has notice when he takes the instrument."

Finally, the rights of one deemed not to be a holder in due course are set forth in Section 41–03–36, N.D.C.C., as follows:

"41–03–36. (3–306) *Rights of one not holder in due course.*—Unless he has the rights of a holder in due course any person takes the instrument subject to

1. all valid claims to it on the part of any person; and

2. all defenses of any party which would be available in an action on a simple contract; and

3. the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose (section 41–03–45); and

4. the defense that he or a person through whom he holds the instrument acquired it by theft, or that payment or satisfaction to such holder would be inconsistent with the terms of a restrictive endorsement. The claim of any third person to the instrument is not otherwise available as a defense to any party liable thereon unless the third person himself defends the action for such party."

■ The Uniform Commercial Code is "not a comprehensive codification of commercial law." *Willow City v. Vogel, Vogel, Brantner & Kelly, supra* 268 N.W.2d at 766. Non-Code law is to be utilized to supplement the provisions of the Uniform Commercial Code where the non-Code law has not been displaced by a particular provision therein. *Merwin v. Ziebarth*, 252 N.W.2d 193, 197 (N.D.1977). This is set forth in Section 41–01–03, N.D.C.C. (U.C.C. § 1–103), which reads as follows:

"41–01–03. (1–103) *Supplementary general principles of law applicable.*—Unless displaced by the particular provisions of this title, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

It is our view that the principles of law enunciated in *Vallely* and *Engen* have been displaced by the particular provisions of the Code pertaining to holders in due course.

Particularly applicable are the provisions contained within Section 41–03–32(3)(a), N.D.C.C., which provide that a holder does not attain the status of a holder in due course merely by taking an instrument under legal process, which occurred in this case. In order to become a holder in due course, a holder must still take the instrument for value, in good faith, and without notice that it is overdue, or has been dishonored, or that there are any claims or defenses against it on the part of any person.

Section 41–03–32(1), N.D.C.C. There is an obligation of good faith imposed upon the performance or enforcement of every contract or duty. Section 41–01–13, N.D.C.C. (U.C.C. § 1–203).

■ The plaintiff, State Bank of Towner, need not plead, nor in the first instance prove, its status as a holder in due course. *Continental Ill. Nat. B. & T. Co. v. Security State Bank*, 182 N.W.2d 116, 118 (Iowa 1970). Furthermore, no burden of proof arises with respect to the holder in due course status of the plaintiff until a defense is shown. However, once it is shown that a defense exists, the person claiming the rights of a holder in due course has the burden of establishing that he, or some person under whom he claims, is in all respects a holder in due course. Section 41–03–37(3), N.D.C.C.[4] In an action upon a negotiable instrument in which the defendant effectively asserts any recognized legal defense thereto, it is generally understood that the determination as to whether or not the plaintiff qualifies as a holder in due course is a factual issue. *duPont v. County Nat. Bank of North Miami Beach*, 369 So.2d 443 (Fla. 3rd D.C.A. 1979); *A. B. G. Investment, Inc. v. Selden*, 336 So.2d 444, 446 (Fla. 4th D.C.A. 1976); *Continental Ill. Nat. B. & T. Co. v. Security State Bank, supra*, 182 N.W.2d at 118.

■ Taking into consideration the pleadings, depositions, affidavits, and inferences to be drawn therefrom, we conclude that genuine issues of material fact do indeed exist, and as such the granting of the motion for summary judgment was in error.

In the instant case, the Johnsruds' answer asserts several affirmative defenses to payment of the promissory note in the amount of $113,969.99. Coupled with this, an examination of all the pleadings and the resistance by the Johnsruds to the motion for summary judgment reveals a genuine issue as to material facts which serves to create a justiciable issue regarding the State Bank of Towner's position and rights as an assignee and holder of the note sued upon. The entire record discloses a genuine issue of material fact as to whether or not the State Bank of Towner is a holder in due course of the note executed by the defendants, the Johnsruds.

Having reviewed the entire record before us in the light most favorable to the party against whom the motion for summary judgment was granted, we conclude that the State Bank of Towner, the party moving for summary judgment, has failed to meet its burden of demonstrating clearly that no genuine issue of material fact exists. *Boone v. Estate of Nelson*, 264 N.W.2d 881 (N.D.1978). We believe that genuine issues of material fact do exist that militate against the granting of summary judgment and that these issues of fact and law should be further explored at trial. Further discussion will serve no useful purpose.

The order granting partial summary judgment is reversed, and the case is remanded to the McKenzie County District Court for further proceedings consistent with this opinion.

SAND, PAULSON and PEDERSON, JJ., concur.

VANDE WALLE, Justice, concurring specially.

I agree with much of what has been written in the majority opinion and I concur in the reversal of the order granting partial summary judgment. *Vallely* and *Engen*

---

4. "41–03–37. (3–307) *Burden of establishing signatures, defenses and due course.*— 1. Unless specifically denied in the pleadings each signature on an instrument is admitted. When the effectiveness of a signature is put in issue

    a. the burden of establishing it is on the party claiming under the signature; but
    b. the signature is presumed to be genuine or authorized except where the action is to enforce the obligation of a purported signer who has died or become incompetent before proof is required.

2. When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense.

3. After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course." § 41–03–37, N.D.C.C. (U.C.C. § 3–307).

may not be applicable to this case for the reasons stated in the majority opinion and may not, as the majority opinion appears to suggest in footnote 2, be good law. However, my reason for concurring specially is that I hope the majority opinion is not construed to mean that all previous decisions of this court concerning the law of negotiable instruments have been automatically superseded by the enactment of the Uniform Commercial Code. Where the provisions of the Uniform Commercial Code are substantially different from the statutes in effect at the time of the previous decisions, those decisions may no longer be considered as precedent. However, in those instances in which the provisions of the Uniform Commercial Code are substantially similar to the statutes in effect at the time of the previous decisions, those decisions should still be considered as precedent.

I have not attempted a word-by-word comparison of the provisions of the Uniform Commercial Code cited in the majority opinion and the statutory provisions in effect at the time of the decisions in *Vallely* and *Engen*. However, a cursory glance reveals to me that Chapters 103 through 107, Sections 6886 through 7134, of the Compiled Laws of 1913, which were in effect at the time *Vallely* and *Engen* were decided, contain most of the substantive provisions included in the sections of the Uniform Commercial Code cited in the majority opinion.