L. R. BAIRD, as Receiver of the First State Bank of Hazen, North Dakota, a Corporation, Plaintiff and Appellant, v. G. G. RADKE, Defendant and Respondent.

(207 N. W. 149.)

**Bills and notes — on showing that note was negotiated to bank under circumstances amounting to a legal fraud on maker, receiver suing thereon held to have burden of proving that bank was holder in due course.**

1. In a suit against the maker of a promissory note, by the receiver of an insolvent bank, the burden devolves on the plaintiff to prove that the bank was a holder in due course, when testimony is introduced by the defendant which tends to show that the note was negotiated to the bank in circumstances amounting to a legal fraud on the maker. Comp. Laws 1913, §§ 6940, 6941 and 6944.

**Bills and notes — verdict for maker of note held to have substantial support in evidence.**

2. For reasons stated in the opinion it is held that the verdict has substantial support in the evidence to the effect that the original note of which the one in suit is described in the record as a renewal, was delivered to one Stoelting, who thereafter endorsed it to the bank, upon a condition which never was fulfilled, and that the endorsee was informed of this fact when the instrument was delivered to the bank.

**Bills and notes — maker of note held "accommodation maker" and liable thereon.**

3. For reasons stated in the opinion it is held that the defendant is an

---

Note.— (1) Burden of proof on plaintiff to show he is holder in due course, see annotation in 18 A.L.R. 38; 34 A.L.R. 294; 3 R. C. L. pp. 1033, 1042; 1 R. C. L. Supp. pp. 952, 956; 4 R. C. L. Supp. pp. 231, 233; 5 R. C. L. Supp. 216; 6 R. C. L. Supp. pp. 214, 216.

(3) Liability of accommodation maker of negotiable instrument, see 3 R. C. L. 1137; 1 R. C. L. Supp. 998.

accommodation maker, and as such liable on the note in suit, under § 6914, Comp. Laws 1913.

Opinion filed December 22, 1925.　Rehearing denied January 29, 1926.

Bills and Notes, 8 C. J. § 1292 p. 984 n. 60; § 1358 p. 1049 n. 9; § 1359 p. 1049 n. 23.

Appeal from the District Court of Mercer County, *Pugh,* J.

Appeal from a judgment in favor of the defendant, and from an order denying a motion for judgment non obstante, or in the alternative, for a new trial.

Reversed and judgment notwithstanding the verdict ordered.

*John Moses* and *Zuger & Tillotson,* for appellant.

The exchange of a note for a note is a valid transaction and the exchange of bills and notes for one another is a sufficient consideration. Central Sav. Bank v. O'Connor (Mich.) 94 N. W. 11.

The notes exchanged need not be for the same amount.　Higginson v. Gray, 6 Met. 212.

In such an exchange each note or bill is an independent obligation not conditioned on the payment of the other.　Cohn v. Husson, 113 N. Y. 662, 21 N. E. 703; Matlock v. Shenerman, 51 Or. 59, 17 L.R.A. (N. S.) 747, 93 Pac. 823; Miller v. Marks (Utah) 148 Pac. 412.

*David Schwartz* and *Milton K. Higgins,* for respondent.

A bill or note given in renewal is supported by the consideration of the original bill or note.　8 C. J. 440.

On motion for a directed verdict the court will consider for that purpose that all the evidence introduced by the party resisting the motion is true and if there is sufficient competent evidence to sustain the verdict it will not be disturbed.　Barkley v. Quick, 33 N. D. 124, 156 N. W. 544.

Where honest and intelligent men may fairly differ in their conclusions from the evidence upon any material fact in the case, it is error to withdraw the evidence from the consideration of the jury.　Miller Co. v. Klovstad, 14 N. D. 435, 105 N. W. 164.

A party asserting error has the burden of proving it and must present

a record affirmatively showing such error. Erickson v. Wiper, 33 N. D. 193, 157 N. W. 602.

It is elementary that the plaintiff is not entitled to a judgment, notwithstanding the verdict, if justifiable on the most favorable construction of the evidence. Vallely v. Devaney, 194 N. W. 903.

JOHNSON, J. Plaintiff, as receiver of the First State Bank of Hazen, brought this action on a promissory note. The case was tried to a jury and resulted in a verdict and judgment in favor of the defendant. This appeal is from the judgment and from an order denying plaintiff's motion for judgment non obstante or, in the alternative, for a new trial.

On January 10, 1920, the defendant executed the promissory note on which suit is brought, for $1,500, payable to Benjamin Stoelting, or order; the note was endorsed without recourse by the payee. The First State Bank of Hazen was organized in 1916, and closed in December, 1923. One Harmsen was cashier of the bank during the entire period of its existence. Stoelting was president until sometime in 1920; he was also a stockholder in the Star Mercantile Company of Hazen, a concern in which defendant Radke was financially interested. The record discloses the fact that Stoelting had borrowed somewhat heavily from the bank and that in the fall of 1917, Harmsen requested the president to reduce his indebtedness to the bank, calling attention to the fact that the loans to him exceeded the limit allowed by law. Subsequently, and on December 14, 1917, Stoelting brought into the bank a promissory note, executed by the defendant, payable to Stoelting; Harmsen claims that Stoelting asked him to give him credit for the note, and that the bank, knowing defendant's financial responsibility, purchased the note, entered it as one of the bills receivable of the bank and gave Stoelting credit on the books for the full amount thereof, to wit: $1,500. This is disputed by Stoelting, who claims, in substance, that the note was conditionally delivered, was to be held by the bank and not to be taken by it in the manner claimed by Harmsen. This note was due December 1, 1918; it was not paid at maturity, but sometime later the defendant executed a renewal note in the sum of $1,500, payable to Stoelting and, by the latter, endorsed without recourse. The renewal note was delivered to the bank, the old

note surrendered, and appropriate entries, evidencing this transaction, made on the books. When the second note fell due, the defendant did not pay. The interest, however, was paid, but not by the defendant, as he testifies; and a renewal note, dated January 10, 1920, payable to Benjamin Stoelting due on December 1, 1920, and signed by the defendant and endorsed by Stoelting as before, was delivered to the bank. The second renewal note was surrendered. The new note was entered in the usual way, as a part of the assets of the bank. It is this note which is in suit.

The plaintiff offered and introduced the note, the bills receivable ledger, the deposit slip showing credit to Stoelting, and the bills receivable and interest ledger. The ledgers show the transaction in detail, with interest payments and the dates when the notes became due. The deposit slip is dated December 14, 1917, credits the account of Stoelting with $1,500 and is marked "Radke, note $1,500." The answer of the defendant, generally supported by his testimony, is that sometime in December, 1917, he agreed to purchase the interest of Stoelting in the Halpern implement business at Golden Valley, which business the Star Mercantile Company of Hazen, in which both were financially interested, had purchased, or was about to purchase: that in contemplation of the deal and for the purpose of binding the agreement, the defendant made the note which was delivered to the bank December 14, 1917, and turned the same over to Stoelting; that the delivery of this note to Stoelting was on the condition that it should be returned to Radke, if, for any reason, the deal should not be made; that the deal was never made; that Radke received nothing for his note; and that the defendant was entitled to, and demanded the return of the note accordingly. The defendant alleges that Stoelting wrongfully transferred the note to the bank; that the bank and its officers were fully cognizant of all the facts and circumstances relative to the making and delivery of the note and the conditions attached thereto, at, and prior to the time when it was endorsed and delivered to the bank. The defendant then alleges that the first renewal note was executed in circumstances well known to the bank; that it was executed under a threat of foreclosure proceedings against Stoelting, and that the latter induced defendant to execute the last renewal note upon the promise that the

first renewal note and the note in suit would be immediately returned to him.

The defendant's testimony is, as stated heretofore, that negotiations were pending between him and Stoelting for the purchase of Stoelting's interest in a certain implement business in Golden Valley; that Stoelting's interest in that business was supposed to approximate this amount; that the note for $1,500 represented the estimate of the purchase price as made by the parties at that time. The Star Mercantile Company operated a store at Hazen; one Halpern owned an implement business at Golden Valley. Negotiations had been in progress for the purchase of the implement business at Golden Valley by the Star Mercantile Company. The Star Mercantile Company, in which both Stoelting and Radke were interested, purchased the Halpern implement business in Golden Valley. At or about the same time, it was proposed that Radke purchase the interest of Stoelting in the Golden Valley business which was to be or had been purchased by the Star Mercantile Company. When the inventory of the Golden Valley business was taken, it was discovered that the value of the stock was greater than had been anticipated and the negotiations for the purchase of the Stoelting interest by the defendant came to an end. Stoelting's interest in the Golden Valley Implement business, it appears, so largely exceeded $1,500 that Radke was unable to buy and Stoelting accordingly released him. Stoelting testified that at the same time and as a part of the same transaction, he executed his note in the same amount payable in thirty days, to Radke. This he did each time there was a renewal. This is admitted by Radke. Stoelting says that he took the Radke note to the bank and asked if he could have credit therefor; but that he told the cashier that the note was dependent upon a certain deal, and that the note would not be good until the deal was consummated. This testimony is denied by the cashier, who asserts that he took the note in good faith without any knowledge of any conditions affecting its enforceability. Radke testifies that the cashier told him that Stoelting had left the note in the bank "with the understanding that it was not to be used until the deal was consummated," and, that in 1918, the cashier had promised to see that the note was returned to the defendant after the deal had been abandoned.

From this brief summary of the testimony, it is clear that there is

·evidence to support a finding by the jury that the note made in December, 1917, was conditionally delivered to Stoelting, and that the negotiation thereof to the First State Bank of Hazen, amounted to legal fraud upon the defendant Radke and that, as a result, the title of the plaintiff to the original note was defective, within the provisions of § 6940, Comp. Laws 1913, being § 55 of the Negotiable Instruments Law. It, therefore, devolved on the plaintiff to prove that it acquired the note without notice of any infirmity or defect. Otherwise, the bank would not be a holder in due course. Comp. Laws 1913, §§ 6941, 6944. There is testimony that the bank knew of the condition upon which the note was delivered. The jury found against the plaintiff on this point, and the finding has substantial support in the evidence.

It is most earnestly contended by the appellant that certain admitted facts demonstrate beyond rational controversy that plaintiff took the original note in good faith, without notice of any defect in the title or infirmities therein; that Radke received full consideration for the original note and each renewal thereof; that he anticipated the probability that his notes would find their way into the channels of trade and took precautions to protect himself in the event of liability due to their negotiation by exacting a note in the same amount from Stoelting each time he signed or renewed. It is true that undisputed evidence strongly supports this view of the case. The bank, upon receiving the note from Stoelting, made it a part of its assets in the usual way and credited Stoelting's account with the full amount. Stoelting, with full knowledge of the situation, used the credit thus given him, for his own personal ends, notwithstanding the fact, according to his own testimony, that he deposited the note in the bank upon the condition that it should be used only in the event that the Golden Valley Implement deal, then pending between himself and Radke, be completed. There is, in addition, the somewhat significant circumstance of the execution of a note by Stoelting, each time, in the same amounts as the Radke notes.

The plaintiff also contends that by executing the renewal notes in the circumstances testified to by the defendant and his witnesses, he waived the defenses arising out of the unauthorized negotiation of the first note to the bank; that the defendant is estopped from setting up these defenses because of the execution of the renewal notes, including the one in suit. The evidence, it is true, tends to show that the cashier

knew, at the time he took all the notes, that the first note was delivered conditionally to Stoelting; that the condition had failed. Radke repeatedly attempted to recover the notes. Each time he renewed, the old note was delivered. The record strongly hints that the defendant was in the position of one falsely lending credit to the bank, or of bolstering its assets for the purpose of making a favorable impression on the state examiner. Radke himself testifies that his note was required to remain in the bank, as an apparent asset, because Stoelting had procured excessive loans from his own bank, which if fully known, would not "look" well to some one. That some one was, of course, the state examiner. True, that public official was not mentioned, but it is past belief that Radke, a man of business experience, did not fully understand the situation. It is conservative to say that the case is on the borderline, if not within the rule, of Vallely v. Devaney, 49 N. D. 1107, 194 N. W. 903, and the cases therein cited.

It is conceded in the record that Stoelting was heavily indebted to the bank, of which he was president until after the note in suit was executed; and that Radke knew, at least to some extent, that Stoelting was thus involved. The note in suit was given in circumstances strongly indicating an intention on the part of Radke to give, and on the part of Stoelting to use, the note for the protection of the latter's credit at the bank, or to prevent proceedings due to the excessive indebtedness of the president to it. Indeed, Radke expressly says that foreclosure action against Stoelting had been threatened. Defendant testifies further, at least twice in the record, that Harmsen, the cashier, had told Radke that the note could not be returned because Stoelting had an excessive loan and that "it would look better" to have Radke's note in the bank. Undoubtedly the parties understood that it would look better to the bank examiner; that the bank examiner's office was in the minds of both at the time. From this suggestion Radke did not dissent. Stoelting expressly states that he gave Radke his own note "to show that if he ever had to pay that other note, then that I would owe him that money, I would have to pay him." This was the purpose the parties had in view when, each time Radke signed a new note, he received a note from Stoelting in the same amount and due on the same date. Radke says that when he demanded the note from Harmsen, the latter

told him that Radke "would have to see Stoelting about it and see that he put in some other papers so I could get it out."

From the foregoing brief statement of the testimony of the defendant and his witnesses, it appears clearly that the note in suit was executed as an accommodation note, for the benefit of Stoelting, and to be used by him in protecting himself, or his own credit, and to his own advantage in his relations with the First State Bank of Hazen. Under § 6914, Comp. Laws 1913, being § 29, of the Uniform Negotiable Instruments Law, Radke was an accommodation maker of the note in suit; he received no value for it, but he lent his name to Stoelting. Radke, therefore, is liable to the bank, which is a holder for value. The fact that the bank knew at the time it took the instrument, that Radke was an accommodation party, is immaterial. It is clear, upon the record and wholly undisputed, that the note in suit, regardless of the unauthorized negotiation of the original instrument, was delivered for the accommodation of Stoelting; that Radke knew, and intended that Stoelting should use it for his own purposes and in his own interest at the bank; and that with the view of possible liability, he took the precaution to protect himself by requiring Stoelting to execute a note in the same amount and due on the same day and bearing the same rate of interest, with himself as payee.

· It seems impossible that the testimony can be any different on a new trial. The judgment and order of the trial court should be reversed and a judgment notwithstanding the verdict entered in favor of the plaintiff.

It is so ordered.

CHRISTIANSON, Ch. J., and BURKE, BIRDZELL, and NUESSLE, JJ., concur.