HANS NYBAKKEN and Karen Nybakken, Respondents, v. L. R.
   BAIRD, as Receiver of First Farmers Bank of Minot, a Cor-
   poration, and G. R. Van Sickle, as Receiver of First Farmers
   Bank of Minot, a Corporation, Appellants.

(219 N. W. 472.)

**Corporations — evidence held to support that party giving notes for stock
did not know of false representations.**

1. In an action brought to quiet title where the defendant set up a mort-
gage lien given to secure notes for which the original consideration was a stock
subscription, the plaintiffs replied, alleging that the subscription was made
in reliance upon false representations as to the dividend-paying qualities of
the stock and failure of consideration consisting in the fact that the stock
had not been delivered. The evidence is examined and it is held:

(a) To support the finding of the trial court to the effect that the sub-
scription was induced by false representations relied upon by the plaintiffs;

(b) To support the finding of the trial court to the effect that the false
representations were known to both the original payee of the note and the
transferee, the bank of which the defendant is receiver;

(c) To support the finding that the subscriber did not become aware of the
falsity of the representations until about the time of the commencement of
this action.

**Bills and notes — when defense of false representations may be made.**

2. Where renewal notes are given in ignorance of the falsity of representa-
tions, in reliance upon which the original obligation was assumed, the maker
is not precluded from asserting his defense when the renewal notes are sought
to be enforced against him.

**Corporations — stock cannot be issued before note given in payment of note
given in settlement.**

3. Under § 4529 of the Compiled Laws of 1913, the capital stock of a cor-
poration cannot legally be issued before the payment of a note given "in
settlement, when paid."

**Banks and banking — receiver in no better position than bank.**

4. Where a maker of a note is not shown to have executed the same for the

Note.—(2) As to whether renewal of note precludes defense of fraud in procure-
ment of original, see annotation in 35 A.L.R. 1280; 3 R. C. L. 1106; 6 R. C. L.
Supp. 222.

   (4) On the question as to what rights are acquired by receiver of insolvent bank,
see 3 R. C. L. 641; 1 R. C. L. Supp. 870.

accommodation of the payee bank nor for the purpose of enabling the bank to make a better showing of assets to the public examiner, the receiver of the bank stands in no better position with respect to the obligation than the bank itself.

Opinion filed May 12, 1928.

Banks and Banking, 7 C. J. § 502 p. 735 n. 69. Bills and Notes, 8 C. J. § 1045 p. 782 n. 36. Corporations, 14 C. J. § 600 p. 439 n. 46; § 874 p. 603 n. 75; § 876 p. 605 n. 87. Fraud, 27 C. J. § 135 p. 23 n. 93. Waiver, 40 Cyc. p. 259 n. 2.

Appeal from the District Court of Ward County, *Lowe,* J.
Affirmed.

*McGee & Goss,* for appellants.

Where fraud is alleged proof must be clear and convincing and fraud must be proven by facts which are inconsistent with an honest purpose. Graham v. Graham (Mich.) 151 N. W. 596; Kavello v. Taylor, 5 N. D. 76, 63 N. W. 889.

"To constitute a notice of infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." 21 N. D. 167, 129 N. W. 99.

"Where, notwithstanding a charge of misrepresentation, over-reaching, bad faith and fraud, made touching a previous transaction, the aggrieved party with full knowledge of all that has transpired, enters into a new contract concerning the same subject-matter, with intent to settle and adjust all past differences, he will be held to have waived any fraud and misrepresentations involved in such previous transactions." Merchants Nat. Bank v. Reiland, 51 N. D. 287, 199 N. W. 945.

"One giving a note to a bank for the purpose of enabling it to pass an examination is, in case of the subsequent failure of the bank, estopped to assert the defense of accommodation when sued by the receiver." Enger v. Mathys, 50 N. D. 487, 196 N. W. 550.

*E. R. Sinkler* and *G. O. Brekke,* for respondents.

"Receiver takes estate of insolvent for benefit of creditors. Receiver stands in shoes of insolvent with same rights and obligations as he had

at moment of insolvency. Choses in action pass to receiver subject to any right of set-off existing at time of insolvency." Gilbertson v. Northern Trust Co. 53 N. D. 502, 207 N. W. 42.

"A receiver takes the estate of an insolvent for the benefit of the creditors. He is in effect an assignee, and stands in the shoes of the insolvent with exactly the same rights and obligations that the latter had at the moment of insolvency. Therefore choses in action pass to him subject to any right of set-off existing at the time of the appointment." Williston v. Ludowese, 53 N. D. 807, 208 N. W. 82.

"Silence in some cases will estop a party, but silence without knowledge will not." Acton v. Dooley, 74 Mo. 63.

"Every estoppel, because it concludeth the man to allege the truth, must be certain to every intent, and not be taken by argument or inference." Van Bidder v. Bierne, 6 W. Va. 168; 19 Am. Dig. Century ed. 2107.

"When fraud in the inception of a negotiable instrument is alleged and proved the burden is upon the indorsee to prove that he is a purchaser in good faith for value, before maturity without notice and in good faith." Tamlyn v. Peterson, 15 N. D. 488, 107 N. W. 1081.

BIRDZELL, J. The plaintiffs instituted an action to quiet title to 480 acres of land in Ward county. The defendant answered, setting up a transaction wherein the plaintiffs had mortgaged the land as security for certain notes given to the original receiver of the First Farmers Bank of Minot in settlement of certain indebtedness. He also asks affirmative relief by way of foreclosure of the mortgage. The plaintiffs, by way of reply, allege that the indebtedness originated in the purchase of capital stock in the Savings Loan & Trust Company and that the notes were given upon representations made by the Savings Loan and Trust Company and the First Farmers Bank of Minot to the effect that the stock was a dividend-paying stock; that it had paid 12 per cent dividends; that it was of the value of $150 per share; and that the Savings Loan & Trust Company was solvent. It was further represented that the dividends on the stock would be sufficient to pay the notes in question; whereas, in truth and in fact, the Savings Loan & Trust Company was insolvent; that its stock was not a dividend paying stock; that it had never paid a dividend and was in fact worth-

less; that these representations were made by the Savings Loan & Trust Company with full knowledge of their falsity and for the purpose of inducing the plaintiffs to purchase the stock; that the plaintiffs relied upon the representations so made by the trust company and the bank and were defrauded thereby. They further allege that the notes were without consideration in that no capital stock was ever delivered or issued to the plaintiffs. To this reply the receiver filed a pleading which sets up various renewals of notes and pleads that Hans Nybakken is estopped to question the validity of the notes or of the indebtedness. The trial court found that representations were made substantially as alleged in the reply; that they were false and known to be false by both the trust company and the bank; that no stock was ever delivered to the plaintiff Hans Nybakken and that he never became a stockholder in the Savings Loan & Trust Company; that the plaintiff Hans Nybakken did not know of the false representations until after the commencement of this action. Upon these findings it was adjudged that title be quieted in the plaintiffs; that the note and mortgage were null and void and that they be canceled and the mortgage satisfied of record. The case is here for trial de novo on an appeal from the judgment.

It is first argued that the evidence fails to establish false representations concerning the dividend paying qualities of the stock. The testimony of Hans Nybakken is to the effect that he subscribed for the stock at the instance of one Elliott; that Elliott told him that the stock had paid as high as 12 per cent dividends the last year and that he thought it was a fine thing for him and the other farmers to get into; that he believed him and signed the subscription note, relying upon what Elliott had said; that he renewed the note once afterward with C. L. Carlson, an officer of the bank, and another time with Van Sickle, the receiver; that he never found out anything about the dividends paid by the company, if any, although once he had tried to find out from Youmans, the president, who threatened to forcibly eject him from the bank. The subscription was made on November 29, 1916. The minute book in which are recorded the proceedings of the board of directors shows that during the years 1914, 1915 and 1916 no dividends had been declared on the common stock, but that annual dividends of 8 per cent had been declared on the preferred stock. In our opinion this evidence amply establishes that at the time the subscrip-

tion was made the stock was not a dividend paying stock and therefore that the representation was false and fraudulent. While it is argued that a dividend of 12 per cent was declared on January 2, 1917, and that this establishes that the representation was true, we are unable to take that view of the matter. The representation had reference to the prior history of the company and did not pertain to the earnings of the current year.

It is next argued that the bank became a holder in due course of the note given by Nybakken, of which the note here involved is a renewal. The evidence shows that the officers of the Savings Loan & Trust Company were also the officers of the bank, and, in addition to this, the minutes of the meetings of the board of directors of the trust company tend strongly to show that the trust company in reality owned the bank. The findings of the trial court as to the identity of the bank and the trust company and the officers of the two are, in our opinion, well substantiated by the evidence. Hence, there was in reality no transfer of the note. But, even if the note be considered as transferred, the knowledge of the existing defense must be attributed to the active officers of the Savings Loan & Trust Company and their knowledge in turn becomes the knowledge of the bank, as they are likewise officers of the latter institution. To the rule that notice to an agent is notice to the principal in transactions between corporations and their officers, an exception is recognized in this jurisdiction where the agent or officer having notice is acting in his own interest. First Nat. Bank v. Bailey, 54 N. D. 534, 210 N. W. 26. But the facts which would bring the case within the exception are not present here, as the paper passed from one corporation to the other; and, consequently, the note is subject to the same defenses in the hands of the bank as though it still appeared directly as an asset of the Savings Loan & Trust Company.

We are of the opinion that the real merits of this controversy center about the contention that the plaintiffs, at so late a date as the commencement of this action, should be precluded from urging the original fraud as a defense to the notes and mortgage in suit and further precluded from seeking affirmative relief with respect to these ostensible obligations. The original transaction took place in November, 1916, and this suit was not instituted until January, 1926. Meanwhile the

corporation, for whose stock the plaintiff Hans Nybakken had subscribed, had ceased to function. Its charter had terminated. This subscriber has several times made small payments to the bank as the ostensible holder of the subscription obligation and, at the instance of the receiver, has renewed his obligation, securing his notes by real estate mortgage. Ordinarily, such conduct would not be considered compatible with a purpose to rely upon a defense which inhered in the original transaction. However, Nybakken testified that he was not aware of the falsity of the representations made to him until he brought this suit. Waiver of one's rights can not be predicated upon what he does in ignorance of the facts upon which his rights depend. 27 C. J. 22; 40 Cyc. 259. The record does not show his participation as a stockholder. He never obtained possession of the certificate. While the certificate was issued dated June 17, 1921, it was illegally issued. Baird v. Kilene, 53 N. D. 244, 205 N. W. 681. The receipt for Nybakken's note recited that it was "in settlement, when paid, for five shares of the common stock of this company." This evidences an arrangement whereby the stock was not to be issued until the note was paid. Under the statute, § 4529 of the Compiled Laws of 1913, the note itself could not be considered as payment for any part of the stock. The receipt contains the further memorandum "may renew note from one to ten years if kept bankable. Agreed that three shares may be cancelled." There is evidence to the effect that Nybakken attempted to cancel the three shares, but that his request was not heeded. Under the option to renew, Nybakken could not have been required to pay for ten years. The stubs in the stock book, as well as some entries in the journal, disclose that another certificate for two shares was issued to Nybakken on December 21, 1920, which was evidently paid for— apparently a part of the original subscription. The minute book in evidence shows that even the officers of the company, aside from the one who was most active in its affairs, experienced considerable difficulty in knowing the actual condition of the company. A subscriber for stock would be in a much less favorable position. Fraudulent representations concerning the dividend paying qualities of the stock at the time of the original subscription, together with a subsequent course of conduct on the part of the most active officer, which was calculated to deceive even those most intimately associated in the conduct of the

business, furnish a fairly adequate explanation for the delay and for the intervening course of conduct of this subscriber. It also adds to the credibility of Nybakken's testimony to the effect that he did not become aware of the fraud until about the time this action was brought.

Counsel for the appellant urge that the receiver should be held to stand in a better position with respect to the obligations in question than would the bank itself, inasmuch as Nybakken had permitted his note and mortgage to remain in the bank, citing Vallely v. Devaney, 49 N. D. 1107, 194 N. W. 903; Engen v. Matthys, 50 N. D. 487, 196 N. W. 550; Baird v. Radke, 53 N. D. 583, 207 N. W. 149. The feature that distinguishes this case from those relied upon is that the instruments in those cases with respect to which the receiver was held to stand in a superior position were given for the accommodation of the bank and for the purpose of enabling the bank to make a better showing of assets to the examiner. There is no suggestion in this record that the obligations in question were made with any such purpose in view. If they were so used by the officers of either the Savings Loan & Trust Company or the bank, it was without the participation of Nybakken.

We are of the opinion that the findings of the trial court are well supported by the evidence and that in the circumstances disclosed the conclusions of law were proper. It follows that the judgment should be affirmed and it is so ordered.

NUESSLE, Ch. J., and CHRISTIANSON, BURKE, and BURR, JJ., concur.